HARRY L. STEVENS AND MARY STEVENS, as *Administrators of the Estate of Henry Stevens, deceased*, v. GEORGE H. BLAKE, *as Guardian of Stephen S. Ray, a Minor*.

### No. 199.

1. COMMISSION TO TAKE DEPOSITIONS — *not error to refuse to order opposite party to allow note sued on to be attached to.* It is not error for the court to refuse to compel the plaintiff in an action upon a promissory note to allow it to be attached to a commission to take evidence.

2. INSPECTION OF DOCUMENT — *not error to refuse to require permission for, by witnesses.* Where the court required the note in controversy to be submitted, at the office of the plaintiff's attorney, at all reasonable times prior to the trial, to the inspection of defendants and their attorneys, there was no error in not compelling them to submit it to the inspection of persons genererally.

3. WITNESS'S REPUTATION FOR VERACITY — *evidence that character in this respect has not been questioned, competent to repel attack on.* The law presumes that witnesses are truthful, and, without any evidence on that point, they are entitled to credit; but if they have established a reputation in the vicinity where they reside for untruthfulness, this fact may be shown in evidence, and the witness is impeached. But to defeat this attempted impeachment it is only necessary to show that the impeaching testimony is not true, and that the witness has not a bad reputation for truth and veracity; and this can be as conclusively proved by showing that the witness's character in this respect has never been questioned, as by proving that it is good.

Error from Douglas District Court. Hon. A. W. Benson, Judge. Opinion filed April 30, 1897. *Affirmed*.

This was an action on a promissory note for one thousand dollars, the execution of which was put in issue. The defendant applied for a commission to take the deposition of certain witnesses in California, which was granted, and for an order requiring the plaintiff to permit the original note sued on to be attached to the commission, which was refused, and the defendants excepted. They also moved for an order, after demand, refusal and notice, requiring the plaintiff to permit them, their attorneys *and their witnesses*, to inspect the original note. The court granted the order as to the defendants and their attorneys, but refused it as to witnesses, and to this refusal the defendants excepted. Exceptions taken by the defendants to the court's rulings on testimony are sufficiently indicated by the opinion. The jury returned a verdict for the plaintiff, and judgment was rendered accordingly. The motion of the defendants for a new trial having been overruled, they brought this proceeding in error.

*B. J. Horton*, for plaintiffs in error.

*John Q. A. Norton*, and *Bishop & Mitchell*, for defendant in error.

WELLS, J.   As to the first and second assignments of error, we think the court went to the full limit of its authority in relation to the note in controversy ; and that for it to have done as the defendants requested would have been not only an error, but a gross wrong. We know of no authority or reason for such an order as was demanded. The third assignment of error is, that the court refused to strike out and exclude from the jury the evidence of F. E.

126    STEVENS, *Adm'r*, v. BLAKE, *Guardian*.

N. Dept.              Opinion.    Wells, J.              5 Kan. App.

Cornell. This witness testified that, about May, 1883, he was working for the plaintiff, when Henry Stevens was visiting there some three days; that, during said visit, witness came in from the barn and saw on the table a piece of paper and some money; that Stevens signed the paper, as did also Mr. Hickman and Mrs. Blake, and Mr. Stevens counted over the money and put it into his pocket; and that Mr. Blake picked up the paper, and had it in his hand when the witness went out. During his examination, a paper was handed the witness which he said looked like the paper. Other witnesses afterward testified that the paper shown this witness was the note in controversy in this case. We think the evidence was proper.

The next alleged error is the court's refusal to admit in evidence the letter of Emma Blake, dated June 23, 1889. There is no contention that this letter contains anything in relation to the subject in controversy in this case, but, on the contrary, the contention is that it should have been admitted for that very reason;— presumably as the foundation for an argument that, if such a note as the one in suit had been in existence, it would have been natural for the mother of the minor, the writer of the letter, to have said something about it when writing about her father to her mother and brother. We think the evidence was properly excluded.

The other allegations of error, except the last, are in relation to the admission of evidence in rebuttal of that offered by the defendants tending to impeach the reputation of Emma Blake for truth and veracity. The plaintiff put upon the stand twelve witnesses who testified that they had known Emma Blake for different periods, ranging from seven to twenty-five years, and

were acquainted with the people in her vicinity.
Seven of these witnesses testified that they knew
her reputation for truth and veracity and that it
was good, and the remaining five testified, substan-
tially, that it was good because they had never heard
it questioned. On cross-examination, most of the
witnesses admitted that they had never heard her rep-
utation for truth and veracity talked about ; and it is
claimed that, for this reason, the evidence should have
been excluded.

We do not think that, in rebutting the attempted im-
peachment of a witness, the same line of questions or
strictness of rules should be insisted on as is required
on the affirmative of the issue. If, out of a thousand
acquaintances, ten should swear that the reputation
of a witness was bad, and the remaining nine hundred
and ninety should swear that, although intimately
acquainted with her neighbors and associates, they
had never heard the witness's reputation questioned,
we hardly think a jury would be authorized to ignore
the latter evidence. The difficuly in deciding this
question is in properly comprehending what is in-
volved in an attempt to impeach a witness. The
question is not whether his reputation is good.
This is presumed ; and the duty does not devolve upon
those producing him to prove a good reputation. But
when his reputation is questioned by an attempted
impeachment, they may prove that he has not a bad
reputation ; and if he has no reputation at all upon
that subject, the attempt is as fully defeated as if a
good one were proved. With this principle recog-
nized, all is clear. The law presumes that witnesses
are truthful and honest and worthy of belief ; but if
in the community where they reside they have estab-
lished a reputation for untruthfulness, this fact may be

128    STEVENS, *Adm'r*. v. BLAKE, *Guardian*.

N. Dept.         Opinion.   Wells, J.         5 Kan. App.

shown in evidence to impeach their credibility. To defeat this attempted impeachment of a witness, it is only necessary to show that the impeaching testimony is not true ; that he has not a bad reputation as to truth and veracity ; and this can be proved as conclusively by showing that his reputation in this respect has never been questioned, as by proving that it is good. We see no reason why the principle applied by Chief Justice Horton, in *The State v. Bryan* (34 Kan. 72), to the question of a woman's reputation for chastity, should not be applied to the question of reputation for truth and veracity. He says :

"A woman's reputation for chastity ' is what the people of her acquaintance generally say of her in this regard ; that is, the general credit for chastity which she bears among her neighbors and acquaintances.' If a woman's neighbors and acquaintances say nothing of her, or do not question her character for chastity, then her reputation in this regard should be considered good. ' The best character is generally that which is the least talked about.' Therefore, the negative evidence of a witness ' that he never heard anything against the character of the woman for chastity,' on whose behalf he had been called ; that is, ' that he never heard her conduct criticised, condemned, or even talked about,' is admissible upon the trial, where the reputation of the woman for chastity is in question, and is strong evidence of the woman's good repute."

These witnesses each testified to an acquaintance, in the vicinity where the witness sought to be impeached resided, sufficient to enable them to know her reputation for truth and veracity if she had established a bad reputation ; and the evidence was properly admitted.

3. Reputation for veracity, defended by evidence that it had not been questioned.

This leaves but the last assignment of error to be

examined, which is the alleged misconduct of the attorney for the prevailing party in the closing argument of the case. The language imputed to him and complained of as improper was as follows :

"Any statement or admission made by George H. Blake, after the time the note sued on is claimed to have been given, to the effect that he did not think that the estate of Henry Stevens, deceased, owed anybody a dollar, and any statement made by George H. Blake that, 'I am sure it does not owe us anything,' are not binding on the minor, and cannot affect the rights of the plaintiff in this. action."

No objection was made to this language at the time, nor for several days afterward ; and while there may be cases of gross abuse of the privileges of an attorney which would warrant a court in setting aside a verdict, we do not think this is one. The statement may or may not have been strictly correct, but if the plaintiffs in error thought it was not so, and that it was prejudicial to them, they should have challenged it at the time. *The State v. Nusbaum*, 52 Kan. 52, and cases there cited.

The judgment is affirmed.