No. 84-332

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

DEBRA L. CARLSON,

      Claimant and Appellant,

  -vs-

JERRY CAIN,

      Employer,

  and

UNINSURED EMPLOYERS FUND,

  and

LEE ENTERPRISES, d/b/a THE BILLINGS
GAZETTE,

      Employer,
  and

HARTFORD ACCIDENT AND INDEMNITY
COMPANY,

      Defendant and Respondent.

---

APPEAL FROM: The Workers' Compensation Court, The Honorable Timothy
Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Keefer, Roybal, Hanson, Stacey & Jarussi; Neil S. Keefer
argued, Billings, Montana

For Respondent:

Moulton, Bellingham, Longo & Mather, P.C.
Jardine, Stephenson, Blewett & Weaver; William Forsythe
and Bradley Anderson argued, Billings, Montana

---

Submitted: March 12, 1985

Decided: May 23, 1985

Filed: MAY 23 1985

*Ethel M. Harrison*

---
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

In an earlier case between these same parties, Carlson v. Cain and Lee Enterprises and Hartford Accident and Indemnity Company (Mont. 1983), 664 P.2d 913, 40 St.Rep. 865, we affirmed a decision of the Workers' Compensation Court awarding benefits to Debra Carlson following injuries incurred in an automobile accident while she was delivering newspapers for her fiance, a carrier who had contracted with The Billings Gazette to deliver its newspaper. On remittitur, we remanded the case to the Workers' Compensation Court for a determination of reasonable costs and attorney fees pursuant to § 39-71-611, MCA.

The cause returns to us on appeal by claimant Carlson from certain portions of the findings of fact, conclusions of law and judgment of the Workers' Compensation Court, dated July 23, 1984, entered after remand from us. Carlson's appeal raises the following issues:

1. A final judgment of the Workers' Compensation Court upon a dispute concerning past-due benefits is a judgment for money entitled to interest under § 25-9-205, MCA, and Rule 31, M.R.App.Civ.P.

2. The terms "compensation" and "compensation benefits" as used in § 39-71-2907, MCA, include medical benefits so as to entitle Carlson to the 20 percent penalty for unreasonable delay in payment of medical benefits.

3. Under § 39-71-2905, MCA, the Workers' Compensation Court has jurisdiction to award and should have awarded a dollar amount for domiciliary care as a medical expense.

4. The out-of-pocket expenses of Ebert Ebert, claimant's mother, in the sum of $6,497.53 from June 28, 1980 to October 15, 1980 are a reasonable and necessary medical expense under § 39-71-704, MCA, to be reimbursed by Hartford.

5. An insurer liable under § 39-71-405, MCA, is not entitled to subrogation under § 39-71-414, MCA.

We will set forth the relevant facts as they pertain to each issue discussed herein.

I.

Interest on Judgments of the Workers' Compensation Court.

On June 29, 1980, appellant was severely injured in an automobile accident and suffered severe and irreversible brain damage. Hartford denied her Workers' Compensation claim. Within a year her medical bills approximated $70,000. Her Workers' Compensation claim was denied by Hartford. Carlson did not qualify for disability Social Security because she lacked the necessary qualifying quarters. The case was tried to the Workers' Compensation Court on November 20, 1981, on the issue of liability. On April 23, 1982, the Workers' Compensation Court ruled in favor of Carlson, finding her to be entitled to temporary total disability benefits and to medical benefits. Hartford appealed. On June 8, 1983, the Montana Supreme Court affirmed the Workers' Compensation Court in the decision referred to above, and remanded for a determination of reasonable costs and attorney fees.

After remittitur, when Hartford still hadn't paid, claimant's counsel threatened a proceeding before the Division of Workers' Compensation to sell Hartford's security bonds. A second hearing was held before the Workers' Compensation Court on October 5, 1983. On July 3, 1984, the

Workers' Compensation Court entered its judgment upon the second hearing. In conclusion of law no. 6, the Workers' Compensation Court found Hartford's actions to be unreasonable and subject to penalty.

On July 14, 1983, Hartford paid the past-due compensation benefits from June 28, 1980 to July 12, 1983 in the total sum of $5,267. On August 12, 1983, Hartford paid past-due medical bills of $17,067.48, and on September 16, 1983, paid additional past-due medical bills of $17,430.02. These amounts had been awarded by the April 23, 1982 judgment of the Workers' Compensation Court. Hartford, however, refused to pay interest on the April 23, 1982 judgment at the time of payment. In its conclusion of law no. 2, the Workers' Compensation Court determined that claimant Carlson was not entitled to interest based on compensation and medical benefits awarded by its earlier judgment.

Under this issue, Carlson points to § 39-71-2904, MCA, which provides that an appeal from a final decision of the Workers' Compensation judge shall be filed directly with the Supreme Court of Montana in the manner provided by law for appeals from the District Court in civil cases. Carlson argues that § 25-9-205, MCA, provides that interest is payable on judgments "recovered in the courts of this State" at a rate of 10 percent per annum. Further, Rule 31, M.R.App.Civ.P. provides that if a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date of the judgment "in the District Court."

Carlson's position is that she is entitled to interest on the amounts contained in the judgment of the Workers' Compensation Court of April 23, 1982, until the past due

- 4 -

benefits were in fact paid in July, August and September 1983.

Respondents argue that the Workers' Compensation judge was correct in adopting conclusion of law no. 2, by relying on the provisions of § 39-71-2905, MCA, which includes in pertinent part:

> "The penalties and assessments allowed against an insurer under chapter 71 are the exclusive penalties and assessments that can be assessed against an insurer for disputes arising under chapter 71."

(For the information of the reader, "Chapter 71" refers to Chapter 71 of Title 39 of the Montana Code Annotated, in which chapter are contained all of the statutory provisions relating to the subject of Workers' Compensation.)

On this issue, the Workers' Compensation Court relied on our decision in Gaffney v. Industrial Accident Board (1958), 133 Mont. 448, 324 P.2d 1063. In Gaffney, this Court said:

> "It should be remembered that the Workers' Compensation Act is a special act designed solely to meet the situations and conditions therein particularly dealt with, and that the industrial accident fund is a trust fund to be administered by the board as trustees and as directed by the act. The schedule of payments set forth in the act are the maximum payments that are authorized and therefore allowable under the act.
>
> "In the absence of a specific statute authorizing the charging of interest on accrued compensation payments against this trust fund, no interest may be assessed or charged. This is a matter that, if deemed of sufficient importance, should be called to the attention of the legislature for proper amendment. The courts may not legislate thereon." 133 Mont. at 454, 324 P.2d at 1066.

Carlson argues that Gaffney should not apply here, because it was a case decided long before the Workers' Compensation Court was established by legislation in 1975. Section 39-71-2901, et seq., MCA. Indeed, it is § 39-71-2905, MCA that gives to the Workers' Compensation judge

exclusive jurisdiction to make determinations concerning disputes under Ch. 71.

Prior to 1975, a claimant dissatisfied with a decision of the then existing Industrial Accident Board could appeal to the District Court where the claimant resided for an appellate review of the Board's decision. Section 92-833, R.C.M. (1947). The trial before the District Court was considered de novo. Section 93-834, R.C.M. (1947). Anyone dissatisfied with the decision of the District Court could then appeal to the Supreme Court, § 92-836, R.C.M. (1947). The former act included a provision that a 10 percent penalty could be levied on the weekly award of benefits for unreasonable delay or refusal to pay. Section 92-824.1, R.C.M. (1947). The penalty provision however was enacted in 1961, after the decision in Gaffney.

We hold that on this issue we are bound by the provisions of § 39-71-2905, MCA. The penalties and assessments allowed against an insurer under the Workers' Compensation chapter are the exclusive penalties and assessments that can be assessed against an insurer. In the 27 years since Gaffney flagged the legislature that the Workers' Compensation laws did not provide for interest on claimant's judgments, the legislature has not acted to include such a provision, though the Workers' Compensation provisions relating to benefits have been amended several times and the procedures revamped in 1975. Gaffney reminds us that "the courts may not legislate thereon."

II.

The Application of the 20 Percent Penalty For Unreasonable Delay in Payment of Medical Benefits.

- 6 -

In its finding of fact no. 6, the Workers' Compensation Court found that under § 39-71-2907, MCA, claimant Carlson was entitled to a 20 percent increase for unreasonable delay in the payment to her of compensation benefits due between June 8, 1983 and July 14, 1983. The Workers' Compensation Court, however, refused to assess a penalty on the delayed payment of the medical expenses, saying:

> "The claimant further requests the penalty on the carrier's refusal to promptly and completely pay the claimant's medical expenses. While this Court specifically finds that Hartford's actions on this matter are unreasonable, the Court lacks jurisdiction to impose penalties on delayed medical reimbursements. Section 39-71-2907 above provides a penalty on delayed or refused 'compensation benefits' only; these are separate and distinct from medical benefits (See § 39-71-704, MCA).
>
> "In light of Hartford's continuous unreasonable actions, it is regrettable that additional penalties cannot be awarded. However, liability for actual payment of accrued and future compensation benefits was tolled until order of the Montana Supreme Court on June 8, 1983. Penalties on delay of medical benefits are warranted, but are not included in the Workers' Compensation Act and the provisions therein are exclusive. Some consolation may be found, little though it may be, in an award of reasonable attorney fees."

Thus, the Workers' Compensation Court decided that it could consider medical expenses for the purpose of determining attorney fees allowable to the claimant, but that it could not assess a penalty for unreasonable delay in the payment of the medical expenses.

Section 39-71-2907, MCA, provides in pertinent part:

> "39-71-2907. Increase in award for unreasonable delay or refusal to pay. When payment of compensation has been unreasonably delayed or refused by the insurer, either prior or subsequent to the issuance of an order by the workers' compensation judge granting a claimant compensation benefits, the full amount of the compensation benefits due a claimant, between the time compensation benefits were delayed or refused and the date of the order granting a claimant compensation benefits, may be increased by the workers' compensation judge by 20 percent."

The claimant argues that the intent of § 39-71-2907, MCA, is to penalize the insurer who refuses to pay claims within a reasonable time and to encourage prompt payment of all Workers' Compensation claims. There is no reason to exclude medical benefits from the penalty statute. Medical expenses have not been specifically excluded; the generic term "compensation" is used in the same all-encompassing manner as it was used in "Workers' Compensation Act" and "Workers' Compensation judge."

Hartford argues that § 39-71-704, MCA, which defines medical expenses under the act makes it clear that weekly compensation and medical expenses are separate and distinct from medical payments.

Section 39-71-704, MCA, provides:

"39-71-704. <u>Payment of medical, hospital and related services</u>. (1) In addition to the compensation provided by this chapter and as an <u>additional benefit separate and apart from compensation</u>, the following shall be furnished:

"(a) After the happening of the injury, the employer or insurer shall furnish, without limitation as to the length of time or dollar amount, reasonable services by a physician or surgeon, reasonable hospital services and medicines when needed and such other treatment as may be approved by the division for the injuries sustained . . ." (Emphasis added.)

We hold that the Workers' Compensation Court erred on this point. Although several statutes in the Workers' Compensation Act use the words "compensation" and "benefits" interchangeably, the Workers' Compensation judge relied on one statute, § 39-71-704, MCA, to determine that medical payments are not included in the term "compensation" as it is used in § 39-71-2907, MCA.

To begin with, the penalty statute itself, § 39-71-2907, MCA, provides that in the event of delay, "<u>the full amount</u> of

- 8 -

the compensation benefits due a claimant . . . may be increased by the Workers' Compensation judge by 20 percent." The legislature did not limit the penalty to just the word "compensation;" it used instead the term "compensation benefits." There should be no argument that the compensation benefits which an injured worker receives under the Act includes compensation for time off the job, for disability and for medical payments. The Act itself makes the term "compensation" universally applicable to all of the sections of the Act. Section 39-71-103, MCA, provides:

> "39-71-103. Compensation provisions. The compensation provisions of this chapter, whenever referred to, shall be held to include the provisions of compensation plan no. 1, 2 or 3, and all other sections of this chapter applicable to the same or any part thereof."

The following statute requires the Workers' Compensation Court to give a liberal construction to the chapter:

> "39-71-104. The court to give liberal construction to chapter. Whenever this chapter or any part or section hereof is interpreted by a court, it shall be liberally construed by such court."

The holding of the Workers' Compensation judge that medical benefits are not subject to penalty conflicts with its holding that the claimant could recover attorney fees relating to the medical benefits. Section 39-71-611, MCA, provides for costs and attorney fees:

> "39-71-611. In the event an insurer denies liability for a claim for compensation or terminates compensation benefits, and the claim is later adjudged compensable by the workers' compensation judge or on appeal, the insurer shall pay reasonable costs and attorney fees as established by the workers' compensation judge."

It is evident that the statute relating to costs and attorney fees uses the term "compensation benefits," and the Workers' Compensation Court construed that term to include medical benefits in determining attorney fees. Yet, the use

of the same term, "compensation benefits" in the penalty clause is distinguished by the Workers' Compensation judge as not allowing a penalty to be assessed.

As an example of the places in the Workers' Compensation Act where the word "benefits" is used interchangeably with "compensation" see § 39-71-709, MCA, relating to partial disability benefits and indemnity benefits. Subdivision (1) of that statute provides:

> "39-71-709(1). In addition to temporary total disability benefits allowed in this chapter, a worker whose injury results in partial disability is entitled to receive compensation under 39-71-703, or indemnity benefits under 39-71-705 through 39-71-708."

In the foregoing statute, the legislature used the word "compensation" and "benefits" interchangeably. This Court would not tolerate an argument that refusal of an insurer to pay indemnity benefits for partial permanent disability or for scheduled losses is not subject to the 20 percent penalty.

The Workers' Compensation judge failed to take into consideration the legislative history of § 39-71-2907, MCA. The penalty provisions for delay of payment in compensation were first enacted in Ch. 227, Laws of Montana (1961). The enactment was codified as section 92-824.1, R.C.M. (1947). It provided:

> "When payment of compensation has been unreasonably delayed or refused, either prior or subsequent to the issuance of an award, the full amount of the order, decision or award may be increased by ten percent (10) of the weekly award."

There is no question that this wording would relate the penalty to the weekly benefits that were paid to the injured employee. When the office of the Workers' Compensation judge was created, the same provision was carried forward as

section 92-849, R.C.M. (1947), except that the new statute provided that the Workers' Compensation judge would make the determination. However, in 1979, in Ch. 63, § 5, Laws of Montana (1979), the penalty provision was amended as follows, with the underlined words showing the amendments:

"When payment of compensation has been unreasonably delayed or refused by an insurer, either prior or subsequent to the issuance of an order by the workers' compensation judge granting a claim on compensation benefits, the full amount of the compensation benefits due a claimant, between the time compensation benefits are delayed or refused and the date of the order granting a claimant compensation benefits, may be increased by the Workers' Compensation judge by 20 percent."

The amendment of Ch. 63, § 5, Laws of Montana (1979), became what is now § 39-71-2907, MCA, the section relied on by the Workers' Compensation judge.

It is clear then from the legislative history of the Act that before 1979 the penalty did not apply to medical benefits since the penalty was limited to "the weekly award." After the amendment in 1979, the penalty applied to "the full amount of the compensation benefits."

Hartford also contends in this appeal that because the payments were made to the medical providers and not to the claimant herself, that the penalty provision should not apply. This argument is specious. It was met by the Kansas Court in Farm Bureau Mutual Insurance Company v. Commercial Standard Insurance Company (1980), 5 Kan.App. 127, 612 P.2d 1265, where the insurer paid a death benefit of $1,000 to the funeral home, and sought to subrogate for the payment against a third-party insurer. The third-party insurer contended that because the payment was not made directly to the decedent, it was not "compensation." The Kansas Court stated:

"Pursuant to this statute, plaintiff paid $1,000.00 to the funeral home. Unlike the $5,000.00 payment to the fund, this sum confers a benefit on the decedent's representatives and is compensation under the Act. By virtue of the plaintiff's paying for the services rendered by the funeral home, decedent's parents were compensated to the extent that they were relieved of assuming an unavoidable expense (citing authority). The funeral bill is analogous to medical expenses which have been held to be compensation. Owen v. Ready-Made Buildings, Inc. 180 Kan. 286, 303 P.2d 168 (1956). Finally the fact that the payment is made directly to the provider of services does not affect its status as compensation. KSA 1979 Supp. 44-504(b) permits subrogation for compensation paid by the employer regardless of who receives the actual payment. We hold therefore that the employer or his insurance carrier is entitled to be subrogated for the amount of the funeral bill and reverse the trial court on this point." 612 P.2d at 1268.

In this case, Hartford claims subrogation against a third-party insurer, and by order of October 25, 1983, the Workers' Compensation Court determined that Hartford here could reduce its future obligations to the claimant by 50 percent until it has paid $74,327. Thus Hartford has been subrogated to the extent of $74,327 against recovery made against a responsible third party. That sum includes the approximate $35,000 that it paid in medical benefits. Its right to include medical payments in its subrogation claim is found in § 39-71-414, MCA, which provides: "The insurer is entitled to subrogation for all compensation or benefits paid under the act." (Emphasis added.) Thus, medical payments under the act for the purposes of subrogation are treated as a compensation benefit; for the same reason, medical payments should be treated as a compensation benefit when a penalty is considered for wrongful refusal or delay in payment.

III.

The Workers' Compensation Court had Jurisdiction to Award and Should Have Awarded a Dollar Amount for Domiciliary Care as a Medical Expense.

- 12 -

Claimant's mother, Edith Ebert, has cared for the claimant since she was discharged from the hospital in October 1980. After a hearing in October 1983, the Workers' Compensation Court ruled on July 3, 1984 in conclusion of law no. 4 that the claimant was entitled to the reasonable value of domiciliary care by her mother from the date of discharge to the present and continuing so long as the care is needed. In arriving at its decision, the court discussed the difference between home nursing services and household tasks. The court adopted a slightly modified version of the factors set forth in Warren Trucking v. Chandler (1981), 221 Va. 1108, 227 S.E.2d 448 to test whether services provided in the home are compensable.

The factors are:

"(1) The employer knows of the employee's need for medical services at home resulting from the industrial injury; (2) the preponderance of credible medical evidence demonstrates that home nursing care is necessary as a result of accident, and describes with a reasonable degree of particularity the nature and extent of duties to be performed by the family members; (3) the services are performed under the direction of a physician; (4) the services rendered are of the type normally rendered by trained attendants and beyond the scope of normal household duties; and (5) there is a means to determine with reasonable certainty the approximate value of the services performed."

The Court found and the parties agree that the services Mrs. Ebert provided for her daughter passed the above test.

The Workers' Compensation Court, however, ruled that it did not have jurisdiction to set a value on the services performed by Mrs. Ebert. The court ruled that the services constituted "such other treatment" under § 39-71-704, MCA, which we have quoted above, and as such the services must be approved by the Division of Workers' Compensation. The court left the decision of how much should be paid to Mrs. Ebert to

the Division upon presentation to the Division of additional evidence.

Claimant contends that the Workers' Compensation Court has the power to evaluate the services and make an award. Hartford claims that the amount of each award for domiciliary services in each case must be determined by the Division.

The portion of § 39-71-704, MCA, which is applicable is that the employer must pay medical benefits for doctors, surgeons and hospitals and for "such other treatment as may be approved by the Division for the injuries sustained." A literal reading of that portion of the Act would indicate that the "other treatment" to be compensable must be approved by the Division. Yet, in this case, the Workers' Compensation Court determined that the "other treatment" was necessary as a medical expense but declined to set the dollar amount.

Section 39-71-2905, MCA, relates to the jurisdiction of the Workers' Compensation judge. In pertinent part, it provides:

> ". . . If the dispute relates to benefits due a claimant under chapter 71, the judge shall fix and determine any benefits to be paid and specify the manner of payment. The workers' compensation judge has exclusive jurisdiction to make determinations concerning disputes under chapter 71.. . ."

The foregoing portion of § 39-71-2905, MCA is an excellent example of the legislature using interchangeably the term "compensation" and "benefits." It is also an affirmation of the legislative purpose to grant to the Workers' Compensation judge "exclusive jurisdiction" in all matters relating to benefits recoverable under the Workers' Compensation Act. Medical payments constitute one form of such benefits. It is the policy of the law to avoid

multifariousness in litigation. All issues involved in lawsuits should be tried in one trial. We, therefore, hold that once the Workers' Compensation Court has acquired jurisdiction of a dispute under the Act, it has jurisdiction to try and decide all of the issues that arise between the parties before him. In this case, the Workers' Compensation Court should have fixed a dollar amount of the domiciliary care to which the Workers' Compensation judge found that claimant Carlson was entitled.

We do not know from the record before us the exact status of the claim for Carlson's claim for domiciliary care. If, following the Workers' Compensation order in this case, the Division is now considering that issue, then we order that the Division continue to consider and make a decision as to the dollar amount due Carlson subject to Carlson's right of appeal to the Workers' Compensation Court on that issue. If, however, the matter has not been referred to the Division, or is not being considered by the Division, then we remand the issue to the Workers' Compensation Court for the fixing of the dollar amount of domiciliary care.

IV.

Whether the Out-of-Pocket Expenses of Edith Ebert In the Sum of $6,497.53 are a Necessary Medical Expense.

After the accident, Edith Ebert, claimant's mother, traveled to Billings, and remained at the bedside of her daughter for about 3 1/2 months. She helped feed, bathe and generally assist claimant Carlson while she was in the hospital. Dr. Wood, who cared for the claimant during this period testified at the hearing that Mrs. Ebert's presence and the services she performed benefited the claimant intellectually and shortened her stay in the hospital. When

- 15 -

Mrs. Ebert took the claimant home and cared for her there, the expense of a nursing home was eliminated. During her stay in Billings, Mrs. Ebert incurred various expenses for food, lodging and transportation which totaled $6,497.53. Claimant Carlson seeks to recoup these out-of-pocket monies as medical expenses. The Workers' Compensation Court denied the request.

The Workers' Compensation judge, finding that the actions of the mother were praiseworthy and indicative of her concern for the daughter, nevertheless denied the claim for out-of-pocket expenses on the ground that no medical need for the services performed had been demonstrated by the claimant. It found that while the expert testimony established that the mother's actions may have been beneficial, there was no need for physical therapy beyond that rendered by the hospital staff. Therefore, reimbursement for the mother's travel and per diem costs while the claimant was hospitalized was denied. Here, the Workers' Compensation Court has decided an issue of fact, determining that medical need was not established by the evidence. Substantial support for the verdict exists and we may not set aside the findings of the Workers' Compensation Court unless it is clearly erroneous. Rule 52(a), M.R.Civ.P.

V.

Whether the Insurer is Entitled to Subrogation Under § 39-71-414, MCA.

The Workers' Compensation judge held in this case that Hartford was entitled to the proceeds of subrogation under § 39-71-414, MCA. Claimant Carlson contends that in this case Hartford should be denied the right of subrogation.

Carlson's contention on this issue demonstrates what may be an inequity that exists in the Workers' Compensation statutes. Here, claimant Carlson had no memory of the accident. An investigation by her attorney developed the possibility that she had been run off the road by a vehicle operated by National Trailer Convoy, Inc. This company denied that they were present at the scene of the accident. Plaintiff's attorney formulated a case against National Trailer Convoy, Inc. that was based solely on circumstantial evidence described at best as very marginal. Nonetheless, National Trailer Convoy, Inc. entered into a settlement with Carlson that her attorney claims was settled for a greatly reduced value in view of Carlson's injuries. At the time of the settlement, the attorney for Carlson faced the dilemma that plaintiffs' counsel face many times in these situations. There were outstanding at that time medical bills of $70,000 and her condition of disability threatened to be permanent. The Workers' Compensation carrier had denied her compensation claim. These factors brought about the necessity, as it appeared to Carlson's counsel, to settle the National Trailer Convoy, Inc. case at a substantially reduced value.

After the settlement, Hartford demanded its right to subrogation under § 39-71-414, MCA. Carlson contends that because of the circumstances in this case, Hartford is not entitled to subrogation. The argument against subrogation follows this line: Hartford insured The Billings Gazette for Workers' Compensation coverage. The Billings Gazette contracted with Jerry Cain for the delivery of its newspapers. Carlson was not a direct employee of The Billing Gazette, but rather was a direct employee of Jerry Cain. Hartford became liable under § 39-71-405, MCA, when it was

determined that Jerry Cain failed to provide Workers' Compensation coverage for his employee, Carlson. This is the established law of the case under Carlson v. Cain and Lee Enterprises and Hartford Accident and Indemnity Company, supra, 664 P.2d 913, 40 St.Rep. 865. Carlson contends that The Billings Gazette had not elected to cover claimant Carlson under § 39-71-411, MCA, but was required to provide compensation pursuant to § 39-71-405, MCA.

Section 39-71-405, MCA, gives Hartford a cause of action over and against Jerry Cain because the statute provides that any insurer who becomes liable for benefits may recover the amount of benefits paid from the contractor (Cain) who was primarily liable. Carlson, therefore, claims that § 39-71-405, MCA, deals with a specific situation, provides a specific remedy and is to be distinguished from the ordinary case where an employer, whose employee is injured by a third party, has a right of subrogation against the third party for the compensation benefits it pays under the subrogation provisions of § 39-71-414, MCA. Since Carlson was not the employee of The Billings Gazette, and therefore of its insurer, Hartford, Carlson claims that Hartford may not take advantage of the subrogation provisions of § 39-71-414, MCA, to proceed against the proceeds of settlement she made with National Trailer Convoy, Inc.

Carlson's contention presents us with a case where in view of her injuries, a presentation of her claim in a trial against National Trailer Convoy, Inc. might have resulted in a judgment much larger than any possible recovery under the Workers' Compensation Act. As it was, she entered into a compromise settlement for $80,000, barely larger than the medical expenses which she had incurred. We have held in a

- 18 -

fire insurance company subrogation case that when the sum recovered from the responsible third party is less than the total loss suffered by the insured, and either the insured or the insurer must to some extent go unpaid, the loss should be borne by the insurer for that is the risk the insurer has been paid to assume. Skauge v. Mountain States Tel. & Tel. (1977), 172 Mont. 521, 528, 565 P.2d 628, 632.

Statutorily, however, Carlson's claim here cannot be sustained. Section 39-71-411, MCA, provides that the Workers' Compensation Act binds the employee himself, his personal representatives and any persons having any right or claim to compensation for his injury or death as well as the employer and the employer's representatives. Section 39-71-414, MCA, provides that "the insurer is entitled to subrogation for all compensation and benefits paid or to be paid under the Workers' Compensation Act." It presents us with a case in which the Court would have to legislate where the legislature has failed to act to accomplish an equitable result. We therefore hold that Hartford is entitled to its subrogation in this cause.

The judgment of the Workers' Compensation Court in this cause is affirmed in part and reversed in part, and remanded to the Workers' Compensation Court.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

- 19 -

_(signatures)_

Justices