IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 84-323

TOM W. PUTNAM,

     Claimant and Appellant,

-v-

CASTLE MOUNTAIN CORPORATION,

     Employer,

-v-

UNITED PACIFIC/RELIANCE INSURANCE
COMPANY,

     Defendant and Respondent,

  and

LEONARD NIELSEN, d/b/a NIELSEN LOGGING,

     Employer and Respondent,

  and

STATE COMPENSATION INSURANCE FUND,

  and

DIVISION OF WORKERS' COMPENSATION,

     Defendants and Respondents.

FILED

JUL 23 1985

Ethel M. Harrison
CLERK OF SUPREME COURT
STATE OF MONTANA

O R D E R

We have now considered the petitions for rehearing filed on behalf of Tom W. Putnam and State Compensation Insurance Fund. We have concluded that a revision in our opinion is appropriate.

IT IS ORDERED:

1. That the full paragraph set forth immediately following the statement of issues on page 2 of our opinion decided June 13, 1985, is hereby withdrawn, the withdrawn paragraph being as follows:

1

> "Initially there were disputes as to the identity of the insurer and the extent of coverage, all of which have been resolved. The respondent in this proceeding is State Compensation Insurance Fund (State Fund)."

In place of such withdrawn paragraph, the following paragraph is hereby inserted in our opinion:

> "There is a dispute as to the identity of the employer of the claimant. The Workers' Compensation Court found that claimant 'was an employee of either Nielsen or the defendant Castle Mountain Corporation.' The respondent in this proceeding is State Compensation Insurance Fund (State Fund), which has agreed to accept liability for the claimant's claim with a reservation of rights against Castle Mountain Corporation and its insurance carrier. We do not rule upon which party was the employer of the claimant."

2. With the exception of the action taken in paragraph 1, the petitions for rehearing are denied.

3. The opinion in the above cause dated June 13, 1985, as modified by the above paragraph change, is approved and constitutes the final opinion in this cause.

DATED this 23rd day of July, 1985.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

2

No. 84-323

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

TOM W. PUTNAM,

       Claimant and Appellant,

  -vs-

CASTLE MOUNTAIN CORPORATION,

       Employer,
  and

UNITED PACIFIC/RELIANCE INSURANCE
COMPANY,

       Defendant and Respondent,
  and

LEONARD NIELSEN, d/b/a NIELSEN LOGGING,

       Employer and Respondent,
  and

STATE COMPENSATION INSURANCE FUND,
  and
DIVISION OF WORKERS' COMPENSATION,

       Defendants and Respondents.

_____

APPEAL FROM: Workers' Compensation Court, The Honorable Timothy
Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        William T. Kelly, P.C.; Halverson, Sheehy, Prindle &
        Finn; Patrick Prindle, Billings, Montana

    For Respondents:

        Hughes, Kellner, Sullivan & Alke; John Sullivan,
        Helena, Montana
        Keefer, Roybal, Hansen, Stacey & Jarussi; Neil
        Keefer, Billings, Montana

_____

Submitted on Briefs: Jan. 24, 1985

Decided: June 13, 1985

Filed: JUN 13 1985

*Ethel M. Harrison*

—————————————————
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from the order of the Workers' Compensation Court granting partial summary judgment. The appeal challenges the court's refusal to apply the statutory penalty to medical benefits and a portion of the weekly temporary total disability benefits. We modify a portion of the order and remand the cause for further proceedings.

The issues are:

1. Does the penalty portion of § 39-71-2907, MCA apply to medical benefits?

2. How should the penalty provisions of § 39-71-2907, MCA be applied to the following:

(a) Temporary total disability benefits from the date of injury on October 6, 1981 to July 25, 1983, which were due on July 25, 1983 and not paid until after October 11, 1983.

(b) Medical benefits due on July 25, 1983 and not paid until after October 11, 1983.

3. Did the temporary total disability rate awarded the claimant properly include all wages earned at the time of his injury?

Initially there were disputes as to the identity of the insurer and the extent of coverage, all of which have been resolved. The respondent in this proceeding is State Compensation Insurance Fund (State Fund).

Claimant suffered injuries in two different unrelated accidents. He was injured on January 16, 1981, while employed by a different employer as a truck driver, receiving weekly wages of $340 based upon a rate of $8.50 per hour. As a result of that unrelated accident, claimant received temporary total compensation benefits of $219 per week from January 16, 1981 to on or about November 10, 1981. On October 6,

2

1981, while employed for a few days by Leonard Nielsen, claimant was severely injured when a dump truck ran over him.

Initially, the State Fund denied the claim for the October 6, 1981 accident. The undisputed findings of fact by the Workers' Compensation Court include the following:

1. In July 1981, the State Fund sent Nielsen (employer) a premium statement for April 1 to June 30, 1981. That statement notified Nielsen that payment of the amount due was to be made within 30 days of the statement or coverage would be cancelled.

2. On September 2, 1981, following non-payment by Nielsen, the State Fund sent Nielsen a "courtesy notice" stating that his coverage was scheduled for cancellation on October 1, 1981.

3. On October 8, 1981 (2 days after claimant's injury), Nielsen's payment was received by the State Fund.

4. Through some type of a mix-up within the State Fund, the payment was not properly noted and Nielsen's coverage was cancelled.

5. At the time of the claimant's accident, it was the policy of the State Fund to allow an employer a ten day grace period from the date of cancellation. (Nielsen's payment on October 8 was made within the ten day period from the cancellation date of October 1, 1981.)

6. On October 26, 1981, claimant's attorney forwarded a claim for compensation in which Nielsen was listed as employer.

7. By letter dated October 29, 1981, the Workers' Compensation Division advised claimant's attorney that Nielsen was uninsured.

The Workers' Compensation Court also found that there was no further communication between the Division or the

3

State Fund and claimant for approximately 17 months. Claimant's attorney called State Fund on March 18, 1983, and received a letter advising that Nielsen's policy was cancelled by State Fund on October 1, 1981 for failure to pay the premiums. Claimant filed a petition for emergency hearing. At that point, the State Fund started an inquiry into its prior determination on the question of coverage. On July 25, 1983, the Bureau Chief of the State Fund was advised that Nielsen's coverage was in effect on October 6, 1981. The State Fund determined that it should accept liability for the claimant's claim. Various procedural steps followed, and the State Fund gave a number of assurances regarding acceptance of liability and its willingness to pay both compensation and medical benefits.

On October 11, 1983, the Workers' Compensation Court heard oral argument on the case and ordered the State Fund to make payments of both medical benefits and temporary total disability benefits. The court then concluded that the 1981 denial of liability for claimant's claim was not unreasonable within the meaning of the penalty statute, § 39-71-2907, MCA. However, the court also reached the following conclusions:

> "Despite its continued agreement to do so, the State Fund had not paid compensation and medical benefits to the claimant as of the date of oral argument. This delay was unreasonable, and invites a penalty. The difficulty lies in determining at what point the State Fund should have reasonably realized its error and promptly tendered these benefits. . . .
>
> . . .
>
> "The Fund acted promptly to ascertain the truth of the improper cancellation allegation found in the Petition, but its delay from July 25, 1983, to the order of benefits (October 11, 1983) was unreasonable. Therefore a 20% penalty shall be assessed to temporary total benefits due the claimant during that period."

4

The court then adjudged that claimant was entitled to a 20%
increase in his temporary total disability benefits from July
25, 1983 until October 11, 1983.

I

Does the penalty portion of § 39-71-2907, MCA apply to
medical benefits?

The pertinent portion of § 39-71-2907, MCA is:

"When payment of compensation has been unreasonably
delayed or refused by an insurer, either prior or
subsequent to the issuance of an order by the
workers' compensation judge granting a claimant
compensation benefits, the full amount of the
compensation benefits due a claimant, between the
time compensation benefits were delayed or refused
and the date of the order granting a claimant
compensation benefits, may be increased by the
workers' compensation judge by 20%."

This issue has just been resolved by the case of Carlson
v. Cain (Mont. 1985), _____ P.2d _____, 42 St.Rep. 695. In
that case, we concluded that an award for medical payments
may be increased by the Workers' Compensation Court pursuant
to the foregoing statute.

II

How should the penalty provisions of § 39-71-2907, MCA
be applied to the following:

(a)  Temporary total disability benefits from the date
of injury on October 6, 1981 to July 25, 1983, which were due
on July 25, 1983 and not paid until after October 11, 1983.

(b)  Medical benefits due on July 25, 1983 and not paid
until after October 11, 1983.

As to (a) weekly benefits from October 6, 1981 to July
25, 1983, the lower court found a reasonable explanation for
the failure to pay. It therefore concluded that the delay in
payment up to July 25, 1983 was not a proper basis for penal-
ty.  In its order of partial summary judgment and in its
subsequent order denying the petition for rehearing, the

5

Workers' Compensation Court concluded that the penalty was warranted once the State Fund acknowledged it was liable for compensation benefits on July 25, 1983. The court further concluded that the penalty should be assessed on benefits which accrued between July 25, 1983 and October 11, 1983.

The stipulation of the parties established that as of October 11, 1983, the following amounts were due from the State Fund to the claimant:

| | |
|---|---|
| Past due medical expenses | $26,048.70 |
| Past due temporary total disability | 11,979.42 |
| Lump sum advance | 5,852.00 |
| Total | $43,880.12 |

We disregard the lump sum advance of $5,852.00, as that was not a past due portion of the claim. It appears that substantially all of the medical expenses of $26,048.70 and the past due temporary total disability benefits of $11,979.42 were actually due to the claimant on July 25, 1983. The lower court incorrectly assumed that no part of temporary total disability benefits or medical benefits already due on July 25, 1983 could be subject to the statutory penalty.

To the extent that both medical benefits and temporary total disability benefits due on July 25, 1983 had not in fact been paid by October 11, 1983, such amounts may be subject to a penalty. The amount of such a penalty is to be determined by the court at its discretion under § 39-71-2907, MCA. The record is not sufficient to allow us to determine the extent of the penalty as to either medical benefits or temporary total disability benefits found to be due on July 25, 1983. In addition, it would not be appropriate for us to attempt to make a decision that § 39-71-2907, MCA, commits to the discretion of the Workers' Compensation judge.

6

In regard to Issue 2 (a) and (b), we remand the cause to the Workers' Compensation Court for determination as to the extent of the penalty, if any, to be charged upon those benefits which were due on July 25, 1983.

                                    III

Did the temporary total disability rate awarded the claimant properly include all wages earned at the time of his injury?

On March 3, 1983, the Workers' Compensation Court entered findings of fact, conclusions of law and judgment in Putnam v. Edson Express, Inc., and Home Insurance Company. The Edson Express case involved a claim by the present claimant for additional temporary total disability based on injuries from the January 16, 1981 accident, which he claimed had been aggravated by the October 6, 1981 accident. The Workers' Compensation Court concluded that claimant was not temporarily totally disabled as a result of the January 16, 1981 accident and that the January accident was not the proximate cause of claimant's current condition. The court further pointed out that claimant had received temporary total disability benefits of $219 per week from January 16, 1981 to on or about November 10, 1981, at which time the temporary total benefits were terminated by the insurance carrier. The court noted, "The insurer has continued to pay biweekly partial compensation benefits to the claimant at the maximum $109.50 rate." The court also specified that the evidence was insufficient to allow the court to make a determination of the permanent partial disability benefits to which the claimant may be entitled. There is no further explanation of the State Fund's payment of partial compensation benefits of $109.50 from November 10, 1981 to on or

7

about March 3, 1983. The order does establish that there had been no award of permanent partial disability benefits.

Claimant was injured on October 6, 1981, while earning $6 per hour or $240 per week from Leonard Nielsen. Claimant states that this temporary job was to last only a few days, and that he began working for Neilsen in October 1981 in order to determine whether he was again capable of working.

Claimant argues that the employment with Nielsen was only temporary employment and that his permanent employment rate was $340 per week, which he had received while working for Edson Express prior to January 16, 1981. In the alternative, he argues that the amount of $109.50 per week compensation benefits from Home Insurance Company should be added to the Neilsen weekly wage of $240.

Section 39-71-701(1), MCA, in pertinent part provides:

> "(1) Weekly compensation benefits for injury producing total temporary disability shall be 66 2/3% of the wages received at the time of the injury. . . ."

Section 39-71-116, MCA, defines "temporary total disability" and "wages" as follows:

> "(19) 'Temporary total disability' means a condition resulting from an injury as defined in this chapter that results in total loss of wages and exists until the injured worker is as far restored as the permanent character of the injuries will permit. Disability shall be supported by a preponderance of medical evidence.
>
> "(20) 'Wages' means the average gross earnings received by the employee at the time of the injury for the usual hours of employment in a week, and overtime is not to be considered. . . ."

At the time of the October 6, 1981 accident, claimant was receiving a weekly wage of $240. That amount constitutes his "average gross earnings" under the statute. The facts do not demonstrate a reason for concluding that the wages paid by a different employer nine months prior to the present

8

injury can be considered as the average gross earnings at the time of injury.

We conclude there is no basis for using the $340 per week paid prior to January 16, 1981 as the permanent employment rate for claimant at the time of the October 6, 1981 accident.

Claimant argues in the alternative that his wages as of October 6, 1981 should include the $109.50 being paid as partial compensation benefits by the insurance company for his former employer, Edson Express. The record is incomplete as to the nature of the $109.50 payments being made by Home Insurance. The amount of the $109.50 payment is 50% of the temporary total disability benefits of $219.00, which was awarded in connection with the January 16 Edson Express accident. This suggests that such payments may be in the nature of permanent partial disability benefit payments.

Claimant argues that the $109.50 should be added to his $240.00 weekly wage in computing the temporary total disability benefits to which he is entitled for the October 6 accident. This type of stacking would not be proper. It is not comparable to the stacking of wages from concurrent employment which has been approved in other cases. In this instance, it would be unfair to include the $109.50 payments in the weekly wage and pay 2/3 of that $109.50 as a part of the temporary total disability benefits, while the claimant at the same time received the $109.50 payments from Home Insurance in connection with the other accident.

We therefore affirm the award of temporary total disability by the Workers' Compensation Court based upon the average weekly wage of $240.00.

We remand this cause to the Workers' Compensation Court for further action in accordance with this opinion.

9

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices