**FILED**

June 10 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 08-0034

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 205N

MONTANA MUNICIPAL INSURANCE AUTHORITY,

        Petitioner and Appellee,

v.

JOHN E. ROCHE, JR.,

        Respondent and Appellant.

APPEAL FROM:    Montana Workers' Compensation Court, WCC No. 2006-1587
                    Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Bernard J. Everett, Knight, Dahood, Everett & Sievers,
                Anaconda, Montana

        For Appellee:

                Oliver H. Goe, Chad E. Adams, Browning, Kaleczyc, Berry & Hoven,
                Helena, Montana

                        Submitted on Briefs: February 19, 2009

                                Decided: June 10, 2009

Filed:

        _____
                        Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 On November 14, 2002, John Roche suffered a work-related injury to his knee while working as a police officer in Anaconda, Montana. At the time of Roche's injury, his employer, Anaconda-Deer Lodge County, was insured by the Montana Municipal Insurance Authority (MMIA), the petitioner in this action.

¶3 MMIA accepted liability for Roche's injury and paid temporary total disability (TTD) benefits to Roche in the amount of $473 per week from November 20, 2002, through December 30, 2004, a total of $45,272.86 in TTD benefits. Roche's treating physician released Roche to return to work as a police officer on December 14, 2004.

¶4 In May 2004, MMIA adjuster Kim O'Brian received a telephone call from the Anaconda city attorney advising her that Roche was working at M&N Sports, a company that repairs and sells motorcycles, snowmobiles and 4-wheelers, while also receiving TTD benefits from MMIA. O'Brian phoned Roche to question him about his connection with M&N Sports. According to O'Brian, Roche denied that he owned M&N Sports or that he was working for M&N Sports. Roche later denied telling O'Brian that he did not own M&N Sports.

2

¶5 On September 9, 2004, counsel for MMIA sent Roche a letter requesting that he provide MMIA with information related to M&N Sports, including whether he owned the business and received income therefrom. Roche failed to respond to the letter. Thereafter, counsel for MMIA contacted Roche by telephone to discuss Roche's relationship to M&N Sports. Counsel sent Roche a follow-up letter on October 5, 2004, noting that Roche agreed to provide information regarding his income from M&N Sports, including copies of his income tax returns for the years 2002 and 2003. Once again Roche failed to respond.

¶6 Based on Roche's repeated failure to provide MMIA's counsel with the requested information, MMIA filed a petition for a mediation conference with the Employment Relations Division. Roche subsequently provided his tax returns for the years 2003 and 2004 showing that M&N Sports is a sole proprietorship owned and operated by Roche. The tax returns also showed that M&N Sports reported gross sales of $54,877 in 2003, and $85,010 in 2004.

¶7 On April 20, 2006, MMIA filed a "Petition to Recover Overpayment" with the Workers' Compensation Court (WCC). A final pre-trial conference was held in the matter on January 29, 2007. More than three weeks later, Roche moved the WCC to "Amend Response to Petition and Contentions Set Forth in Pre-Trial Order" to challenge the constitutionality of § 39-71-701(7), MCA (2001)[1], as an unconstitutional delegation of legislative authority to workers' compensation insurers. The WCC rejected Roche's

---

[1] Because Roche was injured in 2002, the 2001 version of the Workers' Compensation Act applies in this case. Thus, all statutory references are to the 2001 Montana Codes, unless otherwise specified.

3

motion to amend as unduly delayed and stating "that no justification for the untimeliness of the motion was provided."

¶8 On April 10, 2007, trial was held to determine whether Roche had received wages while also receiving TTD benefits without the consent of MMIA, in violation of § 39-71-701(7), MCA. The WCC issued its Findings of Fact, Conclusions of Law and Judgment on November 14, 2007, wherein it determined that much of Roche's testimony was not credible, and that Roche had violated § 39-71-701(7), MCA. The court ordered Roche to repay the $45,272.86 it received from MMIA. Roche filed a petition for rehearing which the WCC rejected.

¶9 Roche raises several issues on appeal including whether § 39-71-701(7), MCA, is unconstitutional; whether the WCC correctly interpreted § 39-71-701(7), MCA; whether the WCC has jurisdiction and authority to find Roche guilty of violating § 39-71-701(7), MCA, and to order Roche to repay his TTD benefits; whether the WCC correctly applied the definition of wages in § 39-71-123(1)(d); MCA, and whether the WCC correctly applied the principle of "real economic gain."

¶10 Having reviewed the record, the District Court's decision and the parties' arguments on appeal, we have determined to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions.

¶11 Roche contended in the WCC and now before this Court that § 39-71-701(7), MCA, is unconstitutional. However, in an order in this case dated September 14, 2006, the WCC required that "[a]ll motions to dismiss, to amend pleadings, and for summary

4

ruling must be **RECEIVED**, with supporting briefs, by the [WCC] on or before January 5, 2007." Roche never requested that the WCC vacate this pre-trial deadline. Instead, seven weeks after that deadline had passed, Roche filed a motion seeking to amend his answer to add a constitutional challenge to § 39-71-701(7), MCA. Roche offered no reason for the delay in his motion.

¶12 We have repeatedly held that a trial court acts within its discretion in refusing late-filed amendments when no justifiable reason for the delay has been offered. *See e.g., Bitterroot Inter. Sys. v. West. Star Trucks*, 2007 MT 48, ¶¶ 50-54, 336 Mont. 145, 153 P.3d 627. Accordingly, we hold that the WCC acted within its discretion in refusing to hear Roche's untimely constitutional challenge.

¶13 Roche also contends that the WCC incorrectly interpreted § 39-71-701(7), MCA, and misapplied the definition of wages in § 39-71-123(1)(d), MCA. The role of the courts when interpreting statutes is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA.

¶14 Section 39-71-123(1)(d), MCA, defines wages as:

> *income or payment in the form of a draw*, wage, net profit, or substitute for money received or taken by a sole proprietor or partner, regardless of whether the sole proprietor or partner has performed work or provided services for that remuneration. [Emphasis added.]

And, § 39-71-701(7), MCA, provides in pertinent part: "A worker may not receive both wages and [TTD] benefits without the written consent of the insurer." Roche has

5

provided no authority in his brief on appeal to show that the Legislature intended anything other than what the plain language of these statutes requires.

¶15    In addition, MMIA introduced substantial credible evidence at trial showing that Roche received wages pursuant to § 39-71-123, MCA, in the form of draws for his personal use from his own labor at M&N Sports. These draws were a "real economic gain" to Roche.

¶16    On appeal, Roche has not challenged the factual findings underlying the WCC's determination. Hence, we conclude that the WCC correctly determined that (1) Roche received wages in the form of draws or other income from M&N Sports, (2) Roche received TTD benefits, (3) Roche received TTD benefits at the same time he received wages from M&N Sports, and (4) Roche did not obtain written consent from MMIA to do so. Accordingly, we hold that the WCC correctly interpreted and applied §§ 39-71-123(1)(d) and -701(7), MCA, in this case.

¶17    Furthermore, Roche contends that the WCC does not have jurisdiction or authority to find him guilty of violating § 39-71-701(7), MCA, and to order him to repay the TTD benefits he received from MMIA. Contrary to Roche's assertions, the WCC does have jurisdiction to order him to repay benefits pursuant to the WCC's statutory authority to consider all matters relating to workers' compensation benefits. Section 39-71-2905, MCA (the WCC "has exclusive jurisdiction to make determinations concerning disputes under [this] chapter").

¶18    Moreover, this Court has held that the legislative purpose of § 39-71-2905, MCA, is to grant the WCC "exclusive jurisdiction" in all matters relating to benefits recoverable

6

under the WCA. *Carlson v. Cain*, 216 Mont. 129, 141, 700 P.2d 607, 615 (1985). These other matters include whether a claimant must pay restitution for benefits for which the claimant was not eligible. *See Champion Intern. Corp. v. McChesney*, 239 Mont. 287, 779 P.2d 527 (1989) (affirming the WCC's order requiring the claimant to repay an overpayment of disability benefits, and attorneys fees based on a percentage of those benefits, to the workers' compensation insurer); *Reil v. State Comp. Mut. Ins. Fund*, 254 Mont. 274, 837 P.2d 1334 (1992) (affirming the WCC's order requiring the claimant to repay benefits improperly awarded to claimant). Accordingly, we hold that the WCC did not err in ordering Roche to repay the more than $45,000 he received in TTD benefits.

¶19 It is manifest on the face of the briefs and the record before us that this appeal is without merit because the findings of fact are supported by substantial credible evidence, the legal issues are clearly controlled by settled Montana law which the WCC correctly interpreted, and the record supports the WCC's conclusion that Roche received wages from M&N Sports at the same time he was receiving TTD benefits from MMIA without MMIA's written consent, in violation of § 39-71-701(7), MCA.

¶20 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

7