William Kapelman, J.
Plaintiff has been active in the field of radio communications for over 30 years and acquired an interest *858 in WOV Broadcasting Corp. (WOV) in 1955. WOV specialized in programs directed towards the Italian American community. Gerald Bar tell, a friend of the plaintiff and one of the principals of the defendant corporations, discussed with plaintiff the acquisition of 100% of WOV. Eventually the parties entered into an agreement in which all of the shares of WOV were sold to Bar-tell Broadcasters of New York, Inc. (BBNY), which is now a wholly owned subsidiary of Bar tell Broadcasters, Inc., a Wisconsin corporation (BB). Plaintiff owned 50% of the WOV stock sold and the balance was owned by the “ Weil-Hartley ” group. The sale was consummated on August 18,1959. On that date, the plaintiff and BBNY entered into an agreement granting to the plaintiff the option to repurchase 20% of all the issued and outstanding shares of stock of WOV. By the terms of this agreement the option was to be exercised no earlier than two years after August 18, 1959, and no later than five years after that date, viz., August 18, 1964. Further, it was to be exercised by giving written notice by registered mail to BBNY at 3500 N. Sherman Boulevard, Milwaukee, Wisconsin, or at such other address as BBNY furnished to the plaintiff in writing. The purchase price of the 20% interest was $350,000, 28% of that sum, i.e., $98,000, was payable on the date of the exercise of the option and the balance was to be paid semiannually in 10 equal installments. BBNY was to provide the plaintiff with certified balance sheets of WOV or its corporate successor within 90 days of the end of each calendar year or fiscal year of the corporation. Adjustments of the purchase price and the amount of shares to be transferred were to be made which would reflect occurrences such as increase or reduction in the number of shares outstanding, corporate reorganization or recapitalization.
On August 11,1964, one week before the option expired, plaintiff wrote to BB, BBNY and the individual Bar tell brothers giving notice that he elected to exercise the option. The body of the letter stated that certified checks in the amount of $98,000 were tendered with the letter, and that the plaintiff was also ready, willing and able to deliver the collateral promissory notes for the deferred balance. The letter then stated that the tender was conditioned on the simultaneous tender and delivery of certificates constituting 20% of all the issued and outstanding shares of the corporation. The letter also “ assumed ” that the financial condition of BBNY was the same as contemplated by the parties in the agreement. There was an enclosure of photocopies of two certified checks in the sum total of $98,000 drawn to the order of BB.
*859 The letter of exercise of the option was rejected by BBNY in a letter from their attorneys dated August 18,1964, the expiration date of the option.
This suit was initiated by the plaintiff for the alleged breach of the option agreement. Plaintiff contends that he complied with the requirements of the agreement and properly exercised his option. The plaintiff further urges that if the court finds that the option was not exercised, in the precisely required manner, it was because the defendants prevented bim from acting and therefore plaintiff should still be entitled to a recovery.
The mechanics of the option exercised were, as previously noted, that the plaintiff send notice of such exercise to a noted address. The specific provision for payment of the purchase price directed the delivery of: “ 28% thereof (purchase price) upon the date of the exercise of the option, and the balance in ten equal installments payable semi-annually, the first installment to be paid six months after the date of the exercise of the option. The payment of the deferred balance shall bear interest a.t the rate of 6% per annum and shall be evidenced by a collateral promissory note secured by deposit of the shares of stock subject to the option.”
The agreement nowhere required a deposit of the shares which were the subject of the option until the balance of the semiannual 10 notes was determined and the collateral promissory note was drawn.
Plaintiff, nonetheless, varied the terms of the purported option exercise by requiring such condition. A further condition imposed by the plaintiff in this letter of August 11, 1964, was that at the time of the exercise, the assets of WOV or its successor corporation equal the liabilities. This condition was existent in the original sale of the corporation by plaintiff to the defendants. Such a clause was not included in the option agreement. The court here notes that it is conceded by the parties that the option agreement was drawn by the attorney for the plaintiff and that neither the defendants nor their attorneys were consulted until its execution. In such a posture, if any ambiguities exist, if anything was omitted which it is now claimed, should have been included, the agreement must be strictly construed against the person drawing it (cf. Rentways, Inc. v. O’Neill Milk & Cream Co., 308 N. Y. 342, 347 ; Taylor v. United States Cas. Co., 269 N. Y. 360, 364). The court rejects the argument that the sales agreement was incorporated by reference into the option agreement. The mere mention of the sales agreement in the “purpose of agreement” preamble to the *860 option is not sufficint to bind the defendants to a substantially; different obligation than that expressed in the body of the agreement. The plaintiff’s attorney specifically provided for contingencies such as recapitalization and the like and the failure to provide for this contingency cannot now be remedied by parol evidence. There was not one shred of evidence adduced at the trial thát such a condition was set contemporaneously with and as a condition precedent to the exercise of the option in order to bring it within the terms of the agreement (cf. Hicks v. Bush, 10 N Y 2d 488 ; Meadow Brook Nat. Bank v. Bzura, 20 A D 2d 287, and cases cited therein). The setting of additional conditions not found in the original option agreement requires a finding that there was no strict compliance with the terms of the option and therefore no acceptance (Gram v. Mutual Life Ins. Co. of N. Y., 300 N. Y. 375).
In addition, there was no tender made by the plaintiff as required by the agreement. A tender requires actual production of the thing to be delivered (Eddy v. Davis, 116 N. Y. 247, 251 ; Greene v. Barrett, Nephews & Co., 238 N. Y. 207, 210). The letter sent contained mere photocopies of checks. The testimony at the trial unequivocally revealed that though the attorney for the plaintiff visited the offices of the defendants with the checks themselves, he had no intention of delivering the checks to be held in escrow or otherwise. In fact, though plaintiff had given the attorney full authority to act on his behalf, the 'attorney stated at the trial, ‘ ‘ I did not make a tender ’ ’.
The court, therefore, finds that the option was not exercised in accordance with its terms.
The plaintiff’s second argument now must be considered. Plaintiff contends that the defendants prevented the plaintiff from properly exercising the option. The different acts of alleged obstruction by the defendants as enumerated in the complaint are analyzed below. The defendants allegedly used bookkeeping methods which saddled the radio station with a long-term liability, making it improvident for the plaintiff to exercise the option. Specifically, the cost of the purchase of the station was reflected as a long-term liability. In addition thereto, the station incurred certain losses because of a change in programming from Italian music to popular ‘1 jive ’ ’ music. Though the plaintiff on several occasions advised against this change, there is no indication that the change was made by defendants in bad faith. Similarly, there was no evidence that other than accepted bookkeeping procedures were used, including intercorporate bookkeeping entries. In any event, the option agreement *861 specifically provided for adjustments to the purchase price in the event of restructuring. Plaintiff also testified that he knew what the purchase price would be and what adjustments would have to be made. He recognized the debt of the corporation and its origin.
The plaintiff also urges that the defendants refused to negotiate prior to exercise of the option as to those matters concerning which he had questions. This alleged obstruction is belied by the numerous letters, conversations and reports introduced into evidence in the course of the trial.
Plaintiff further alleged that the corporation concealed its financial condition and breached the agreement by failure to deliver annual financial statements. Though the court finds that these financial statements were not properly delivered, the court does not find this to be sufficient excuse to warrant failure of the plaintiff to properly exercise the option, or to have made it impossible for him to properly exercise the option.
The plaintiff further alleges that the defendant had pledged all the shares of the radio station involved in a financial transaction prior to the appointed date of the option termination and, therefore, that even if the option were exercised, defendants would have been unable to perform. The loan agreement involved, admitted into evidence, clearly indicates to the contrary, i.e., that 20% of the shares was available for plaintiff had he chosen to exercise the option. This last 20% was pledged a few months after the option expired.
The plaintiff further urges that the rejection by defendants of the exercise was dated on the last date of the option to obstruct his correcting any errors. The option was exercised on the 11th of August and not received before the 12th. Less than one week’s time to evaluate an option exercise structured as it was and to accept or reject it is reasonable.
The court finds, therefore, that there was only one act of the defendant which could possibly be construed as an obstruction, viz., failure to submit annual reports. In view of all the information available to the plaintiff, this obstruction standing alone is not sufficient to excuse the failure to exercise the option, especially so since machinery was provided for necessary adjustments.
During the course of the trial, the plaintiff introduced evidence in an attempt to show that there were other understandings and agreements which must be considered with the option agreement. The most important document involved is an undated ‘ ‘ letter of intent ’ ’. The court notes firstly that certain parts of the let *862 ter are blank and more importantly, certain key items, snch as the purchase price of the shares, method and time of exercise of the option, an employment contract for plaintiff, are either varied or nonexistent in the final option. Secondly, the court notes that overriding any further considerations of this or other documents or conversations is the fact that they are barred by the Statute of Frauds (General Obligations Law, § 5-701 ; Laskey v. Rubel Corp., 303 N. Y. 69 ; Leumi Fin. Corp. v. Richter, 17 N Y 2d 166 ; Steinberg v. Universal Machinenfabrik GMBH, 24 A D 2d 886, affd. 18 N Y 2d 943). The terms of the option are clear and unambiguous. The court will not make a new contract under the guise of interpreting the controlling writing (Heller v. Pope, 250 N. Y. 132, 135 ; Friedman v. Handelman, 300 N. Y. 188, 194 ; Wilson Sullivan Co. v. International Paper Makers Realty Corp., 307 N. Y. 20, 25). The court, therefore, directs judgment in favor of the defendant.