No. 88-613

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

RONALD F. HILBIG,

        Claimant and Appellant,

  -vs-

CENTRAL GLASS COMPANY,
        Employer,
    and
STATE COMPENSATION INSURANCE FUND,

        Defendant and Respondent.

APPEAL FROM:  The Workers' Compensation Court, The Honorable
               Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        R. V. Bottomly; Bottomly Law Offices, Great Falls,
        Montana

    For Respondent:

        R. Scott Currey, Agency Legal Services, Helena,
        Montana

Submitted on Briefs:  June 30, 1989

Decided: August 11, 1989

Filed:

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Ronald Hilbig appeals a decision of the Workers' Compensation Court denying a lump sum conversion of his benefits because the parties failed to enter into a binding agreement. Mr. Hilbig also appeals the lower court's denial of his petition for a larger award of domiciliary care. We affirm and remand for further proceedings consistent with this opinion.

The issues are:

1. Did the Workers' Compensation Court err in concluding that the parties' oral negotiations did not establish a binding contractual agreement?

2. Did the Workers' Compensation Court err in its award of domiciliary care?

Ronald Hilbig had been employed as a glazier for 24 years when he fell from scaffolding approximately 12 to 15 feet to the ground while on the job on November 17, 1983. As a result of this fall, Mr. Hilbig suffered a severe head injury and was rendered permanently totally disabled, a fact which the State Fund does not dispute.

On July 17, 1985, two meetings were held between claimant's counsel, and State Fund representatives in an attempt to negotiate a settlement agreement. The Workers' Compensation Court found that during these meetings, the parties agreed that claimant was permanently totally disabled and could receive a lump sum payment of $179,549.63 if claimant's counsel could "put together" a justification for the lump sum conversion. It is the parties' understanding of the phrase "put together" which is the subject of this appeal. The Workers' Compensation Court made the following findings in this regard:

2

5. Mr. Bottomly [claimant's attorney] understood the phrase "put together" to mean that he would send Mr. Strizich [State Fund claims manager] a petition and affidavit of justification, Mr. Strizich would then concur by signing and then submit it to the Insurance Compliance Bureau for approval.

6. Mr. Strizich understood the term "put together" to mean that Mr. Bottomly would present documentation that would be acceptable to the State Fund and the Insurance Compliance Bureau to justify a lump sum conversion.

Following the initial meeting, claimant's counsel prepared and submitted a written petition to the State Fund proposing that $120,000 of claimant's benefits be placed in an annuity to draw interest. This proposal was rejected by the State Fund. Another meeting was held between Mr. Bottomly; Mr. Currey, attorney for the State fund; and Mr. Strizich, in an attempt to settle the dispute. At the meeting, a social security offset was also discussed. The Workers' Compensation Court found that the parties' testimony conflicted as to what was resolved at that meeting, because Mr. Bottomly testified that an agreement was made on the social security issue at that time, Mr. Strizich denied the making of any agreement, and Mr. Currey was not able to recall. The second meeting resulted in a written lump sum proposal dated January 21, 1987, in which, after a dispute over the social security offset language, the State Fund would not concur.

Claimant then filed a petition in the Workers' Compensation Court seeking to enforce the lump sum conversion which he contended was agreed to by the parties. The Workers' Compensation Court denied claimant's petition based on a finding that there was no enforceable agreement reached by the parties regarding a lump sum settlement. The lower court

3

did grant claimant's claim to payment for 24-hour domiciliary care, however, the payments were limited to a four-month period from December 1986 to April 1987. Claimant appeals the limitation of this award along with the lower court's denial of his petition.

I

Did the Workers' Compensation Court err in concluding that the parties' oral negotiations did not establish a binding contractual agreement?

Claimant argues that a valid and enforceable agreement was created as a result of the parties' oral negotiations during the two meetings. He bases this contention on the fact that the intentions of the parties are discernable to a reasonable degree and that the material elements of the agreement were stated, citing Thrasher v. Schreiber (1926), 77 Mont. 221, 227, 250 P. 600, 602, and Somont Oil Co., Inc. v. Nutter (Mont. 1987), 743 P.2d 1016, 1019, 44 St.Rep. 1685, 1689. The State Fund concedes that the parties did in fact agree to claimant's disability status as permanently totally disabled and that claimant could receive biweekly benefits in the form of a lump sum payment. Despite these points of agreement, the State Fund argues that the parties' understanding of how those terms were to be acted upon is at issue and prevents the formation of a valid, enforceable agreement. As pointed out by the hearing examiner, this issue hinged upon the parties' understanding of what it meant to "put together" a justification for a lump sum conversion. The Workers' Compensation Court's findings reflect that claimant's counsel assumed a lump sum payment would be forthcoming upon submission of the written proposal, while the State Fund representative understood that further approval would be necessary. The record supports these findings and the par-

4

ties do not disagree as to the source of the misunderstanding, but only as to its effect.

In order for a valid and enforceable contract to exist, the following elements must be present:

(1)   identifiable parties capable of contracting;
(2)   their consent;
(3)   a lawful object; and
(4)   a sufficient cause or consideration.

Section 28-2-102, MCA.

The Workers' Compensation Court concluded that a lack of consent precluded the formation of a binding contract requiring the insurer to concur in the written petition later submitted by the claimant. We agree. The facts here indicate that there was no meeting of the minds on the basic elements of an enforceable agreement. Claimant's counsel assumed that mere preparation of the terms in written form was sufficient. This assumption, however, is not consistent with the statutory procedure for conversion of biweekly benefits to a lump sum payment as set forth in § 39-71-741, MCA. That statute was amended retroactively in 1985. However, this Court reinstated all pre-1985 injuries under the language of the statute prior to the 1985 amendment in Buckman v. Montana Deaconess Hospital (Mont. 1986), 730 P.2d 380, 43 St.Rep. 2216. The relevant statute, therefore, is § 39-71-741, MCA (1983), which reads:

> Compromise settlement and lump-sum payments --division approval required. The biweekly payments provided for in this chapter may be converted, in whole or in part, into a lump-sum payment. Such conversion can only be made upon the written application of the injured worker or the worker's beneficiary, with the concurrence of the insurer, and shall rest in the discretion of the division, both as to the amount of such lump-sum payment and the advisability of such conversion. The division

5

is hereby vested with full power, authority, and jurisdiction to allow and approve all compromises of claims under this chapter. All settlements and compromises of compensation provided in this chapter are void without the approval of the division. Approval of the division must be in writing. . . .

The statute requires written application by the worker (Mr. Hilbig) with the concurrence of the insurer (State Fund). Claimant failed to prove the concurrence of the State Fund to the satisfaction of the Workers' Compensation Court. The record contains substantial evidence to support that conclusion. We therefore affirm the Workers' Compensation Court on this issue. As a result claimant is not entitled to the claimed twenty percent penalty under § 39-71-2907, MCA.

II

Did the Workers' Compensation Court err in its award of domiciliary care?

On January 9, 1987, the parties agreed upon a pretrial order which included the following issue:

Whether the State Fund has paid all medical expenses of which payment is required pursuant to section 39-71-704, MCA.

The trial took place on January 16, 1987. Prior to the entry of judgment, the State Fund sent a letter to claimant's counsel dated April 8, 1987, stating that:

The State Fund will authorize Mr. Hilbig to obtain domiciliary care from the Northern Rocky Mountain Easter Seals Society for a period of 6 months, 8 hours per day, at $7.50 per hour.

This offer was rejected by the claimant by letter dated April 20, 1987, which stated:

The offer of limited home care which you have extended comes after this case, and that particular issue, is before the Workers' Compensation Court,

6

and the issue has been submitted for the Court's decision. The Workers' Compensation Court now is the exclusive forum to deal with the issue of the need and extent of home care services.

Mrs. Hilbig has been supplying home care services for 16 hours five days a week and 24 hours two days a week, since November 17, 1983, and of course, expects to be compensated for her services, both in the past and in the future.

On April 14, 1987, prior to receipt of the above letter, the State Fund filed a motion to clarify issues relating to domiciliary care. The State Fund contended that due to its offer of April 8, 1987, the issue of future benefits had been resolved and was no longer an issue before the court. The court determined that clarification of the issue was not necessary because:

Both parties have agreed that the question of domiciliary care to April 8, 1987, is an issue. Whether or not future domiciliary care is necessary depends upon the evidence presented and the court will not create new issues at this late date. Issues not decided at this hearing can return by the petition of either party should disputes not be resolved by the parties.

The court also noted that "[a]t the end of the time period (six months from the date payment began) consideration would be given to future needs of the claimant."

The court's findings of fact, conclusions of law and proposed judgment were entered on June 20, 1988. The court determined that Mr. Hilbig was entitled to 24 hour-a-day home health care, and awarded domiciliary care payable to claimant's wife in the amount of $7.50 per hour for 24 hours a day from December 18, 1986, to April 8, 1987. The date which payment was ordered to begin was the date the lower court found the employer first had knowledge of the need or demand for domiciliary care, citing Carlson v. Cain (1985), 216

Mont. 129, 140, 700 P.2d 607, 614. Regarding the April 8, 1987 cutoff date, the court concluded that:

> The defendant State Fund has acknowledged claimant's entitlement of domiciliary benefits of $7.50 per hour for eight hours a day to claimant's wife beginning April 8, 1987, but not before that date.

No other justification appears in the court's order why home health care benefits were limited to a four-month period or the need for future domiciliary care.

On June 20, 1988, claimant filed a petition with the Workers' Compensation Court requesting that the court revise its order of June 17, 1988, to provide for domiciliary care, past and future, based on the court's finding that claimant is entitled to 24 hours of domiciliary care. Claimant's petition was denied by order dated July 12, 1988, which stated:

> The issues decided by the hearing examiner were those presented by the parties and there is clearly no basis for the claimant to now request additional issues beyond those submitted to the Court. The record amply supports the findings of the hearing examiner and the Judgment of this Court.

Claimant now appeals both the above order and the judgment rendered on the issue of domiciliary care. First he disputes the court's finding that the employer did not have knowledge of claimant's need for domiciliary care until December 18, 1986. He argues that the evidence clearly establishes constructive notice on the part of the employer from the date of claimant's discharge from the hospital on December 6, 1983.

Claimant also disputes the court's limitation of home health care benefits to April 8, 1987, arguing that such a conclusion is inconsistent with the court's finding that claimant requires 24 hours of care each day and that his

8

condition is "not improving and is likely to decline." Claimant requests that this Court reverse the lower court's imposition of a cutoff date and order that home health care benefits be paid, at the rate of 24 hours per day, unless and until the State Fund demonstrates that such care is no longer needed. We will address these claims separately.

LIMITATION OF BENEFITS AS COMMENCING ON DECEMBER 18, 1986:

The employer's knowledge of the employee's need for medical services at home resulting from the industrial injury is one factor which must be met when considering eligibility for domiciliary care. Larson v. Squire Shops, Inc. (Mont. 1987), 742 P.2d 1003, 1008, 44 St.Rep. 1612, 1619. The Workers' Compensation Court determined that December 18, 1986, was the date the employer first knew of the need or demand for domiciliary care. On that date, the Workers' Compensation Court found that a pretrial conference was held in which the claimant first requested domiciliary care. The court further found that the medical reports prior to that date did not recommend home health care for the claimant.

Claimant argues that the employer had constructive knowledge of his need for home health care based on medical reports demonstrating the severity of head injury and the effects upon claimant, such as a memory loss, headaches, depression and anxiety. Claimant contends that this constructive knowledge dates back to December 6, 1983, when he was released from the hospital, and that Mrs. Hilbig should be reimbursed for 24 hour per day health care from that date.

The conclusion of the Workers' Compensation Court will not be disturbed if there is substantial evidence in the record to support its findings. Giacoletto v. Silver Bow Pizza Parlor (Mont. 1988), 751 P.2d 1059, 1061-62, 45 St.Rep. 536, 537. We conclude that the record supports the lower

9

court's findings and conclusions that there was no knowledge on the part of the employer until December 18, 1986, when domiciliary care was first requested by the claimant. We affirm the Workers' Compensation Court as to the commencement date of domiciliary care.

LIMITATION OF BENEFITS TO APRIL 8, 1987:

It is not clear from the court's findings why it placed this cutoff date on benefits payable to Mrs. Hilbig. In its Order Denying Defendant's Motion to Clarify the Domiciliary Care Issue, the court stated:

> On April 8, 1984, [1987] State Fund claims examiner, Larry Thomas, informed the claimant's counsel, R.V. Bottomly, that the State Fund is authorizing domiciliary care for a period of six months, at eight hours per day, at $7.50 per hour. At the end of that time period, consideration would be given to future needs of the claimant.

The record shows that the Workers' Compensation Court limited domiciliary care to benefits due prior to April 14, 1987, the date of the State Fund offer of 8 hours per day of such care at $7.50 per hour. The court assumed that benefits after that date would be decided at some later date following a six-month observation period during which claimant's needs would be monitored and evaluated. We note that more than one year had expired from the April 14, 1987 offer to the June 20, 1988 court order. The six-month period had long expired. In addition, we note that the pretrial order of January 9, 1987 provided that the issue was whether the State Fund had paid all medical expenses under § 39-71-704, MCA, which included the domiciliary care issue.

We affirm the Workers' Compensation Court award of domiciliary care of $7.50 per hour, 24 hours a day, from December 6, 1986, to April 8, 1987. We remand this cause to

10

the Workers' Compensation Court for such additional proceedings as it shall determine to be necessary in order that the court may determine the extent of the domiciliary care to which claimant is entitled from and after April 8, 1987.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices