No. 90-296

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

RONALD F. HILBIG,

Claimant and Respondent,

v.

CENTRAL GLASS COMPANY,

Employer,

and

STATE COMPENSATION INSURANCE FUND,

Defendant and Appellant.

APPEAL FROM:   Workers' Compensation Court
The Honorable Timothy W. Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Honorable Marc Racicot, Attorney General, Helena,
Montana; R. Scott Currey, Agency Legal Services
Bureau, Helena, Montana; James Scheier, Agency
Legal Services Bureau, Helena, Montana

For Respondent:

R. V. Bottomly, Attorney at Law, Great Falls,
Montana

FILED

AUG - 1 1991

Filed:   *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Submitted on Briefs:   March 28, 1991

Decided:   August 1, 1991

Justice Terry N. Trieweiler delivered the opinion of the Court.

This is an appeal from the Workers' Compensation Court's order awarding attorney fees to the claimant based upon his recovery of benefits for domiciliary care. We affirm in part and remand to the Workers' Compensation Court for further consideration.

The issues are:

1. Did the Workers' Compensation Court err in awarding attorney fees to the claimant based upon his recovery of benefits for domiciliary care?

2. If the claimant was entitled to an award of attorney fees, what was the proper rate of payment?

The claimant was injured on November 17, 1983, during the course of his employment with Central Glass Company when he fell from the scaffolding on which he was working and sustained severe head injuries. The defendant, State Compensation Insurance Fund, insured Central Glass Company against workers' compensation claims at the time of claimant's injury.

After some initial disagreement, the State Fund conceded that the claimant was totally disabled and has paid him permanent total disability benefits. However, a dispute arose over the claimant's entitlement to a lump sum advance of his benefits, and a petition was filed on the claimant's behalf on July 18, 1986. During the course of those proceedings, and based upon evaluations of the claimant by a clinical psychologist, a neurologist, and a home health care nurse, the claimant also made a claim for 24-hour-a-day domiciliary care. That claim was denied by the defendant.

The claimant's case went to trial before the Workers' Compensation Court on January 26, 1987. On June 20, 1988, that court entered its judgment denying the claimant's claim for a lump sum advance of benefits, but awarding the claimant benefits for domiciliary care during the period of time from December 18, 1986, through April 8, 1987. Although the court, at that time, found that the claimant's condition was "not improving but was likely to decline" and that home health care services "are necessary and an essential component of claimant's care," no provision was made for the payment of benefits for home health care beyond April 8, 1987.

That judgment by the Workers' Compensation Court was appealed by the claimant to this Court. On August 11, 1989, we issued our decision affirming the trial court's denial of the claimant's claim for a lump sum advance and remanding this case to the Workers' Compensation Court for further consideration of the claimant's entitlement to benefits for domiciliary care after April 8, 1987, and in the future. Hilbig v. Central Glass Co. (1989), 238 Mont. 375, 777 P.2d 1296.

On remand, without the benefit of or need for further evidence, and based upon the record from the prior proceeding, the trial court entered summary judgment for the claimant; ordered the defendant to pay the claimant's wife $7.50 an hour, 24 hours a day, from April 8, 1987; and also ordered the defendant to pay for the claimant's health club membership, which it found to be necessary for the claimant's further therapy and treatment. The claimant was awarded attorney fees pursuant to § 39-71-612, MCA (1983).

3

The Workers' Compensation Court found that the claimant's award of benefits for domiciliary care subsequent to April 8, 1987, resulted from this Court's decision, and ordered the defendant to pay the claimant's attorney fees in an amount equal to 40 percent of the value of benefits for domiciliary care due from the defendant after April 8, 1987.

On appeal, the defendant argues that it has voluntarily paid benefits to the claimant for domiciliary care; the recovery of those benefits did not result from a decision of the Montana Supreme Court, nor the Workers' Compensation Court; and therefore, the claimant is not entitled to an award of attorney fees. In the alternative, the defendant argues that if the claimant is entitled to an award of attorney fees, then that award should be limited to the 25 percent rate which is provided for in the claimant's attorney fee agreement in those cases which have not gone to hearing.

In order to address the issues raised by the defendant, it is first necessary to set forth the rules that pertain to the recovery of attorney fees in this case.

The claimant was injured on November 17, 1983, and the statute which was in effect on the date of his injury determines the attorney fees to which he is entitled. Cuellar v. Northland Steel (1987), 226 Mont. 428, 736 P.2d 130. That statute is § 39-71-612, MCA (1983). It provided in relevant part as follows:

> 1. If an employer or insurer pays or tenders payment of compensation under chapter 71 or 72 of this title, but controversy relates to the amount of compensation due and

4

the settlement or award is greater than the amount paid or tendered by the employer or insurer, a reasonable attorney's fee as established by the division or the workers' compensation judge if the case has gone to a hearing, based solely upon the difference between the amount settled for or awarded and the amount tendered or paid, may be awarded in addition to the amount of compensation.

In Wight v. Hughes Livestock Company, Inc. (1983), 204 Mont. 98, 664 P.2d 303, we held that the purpose of the aforementioned statute was to provide a "net recovery of compensation benefits" to the claimant and that therefore, there would be a "strong presumption" that fees to successful claimants should be based upon their contracted-for obligation with their attorney. In this case, the claimant's fee agreement with his attorney provided that he would pay him at the following rates:

(a) For cases which have not gone to hearing before the Workers' Compensation Court, TWENTY-FIVE PERCENT (25%) of the amount of benefits the claimant receives due to the efforts of the attorney;

(b) For cases which go to a hearing before the Workers' Compensation Judge, THIRTY-THREE PERCENT (33%) of the amount of benefits the Client receives from an order of the Workers' Compensation Judge;

(c) For cases which are appealed to the Montana Supreme Court, FORTY PERCENT (40%) of the amount of benefits the Client receives based on the Order of the Supreme Court.

In this case, the defendant argues that because it offered to pay a portion of the domiciliary benefits that claimant was eventually awarded after the trial but before the trial court's judgment was actually entered, the claimant is not entitled to an award of attorney fees at all. The defendant's position requires an analysis of the following sub-issues:

5

1.    Whether the tender or payment of workers' compensation benefits after trial but before judgment is entered can preclude a claim for attorney fees;

2.    Whether a mere "offer" without actual payment serves any purpose under § 39-71-612, MCA (1983); and

3.    What, if any, domiciliary benefits had been paid by the defendant to the claimant prior to this Court's decision on August 11, 1989.

## FACTUAL BACKGROUND

This case went to trial on January 26, 1987.  It is clear from the pretrial order and the proposed judgments filed by both parties that the claimant's entitlement to benefits for domiciliary care was an issue at the time of trial and the defendant denied any liability for those benefits.

One of the issues set forth in the pretrial order was as follows:

6.    Whether the State Fund has paid all medical expenses of which payment is required pursuant to Section 39-71-704, MCA.

In a brief filed two and one-half months after trial, the defendant acknowledged that the issue regarding medical expenses was based on the claimant's contention that he was entitled to benefits for past and future domiciliary health care pursuant to our decisions in Carlson v. Cain (1985), 216 Mont. 129, 700 P.2d 607, and Larson v. Squire Shops, Inc. (1987), 228 Mont. 377, 742 P.2d 1003.  The State Fund also acknowledged that at the time of trial the claimant sought compensation for a health care attendant

6

while his wife was at work, and payment for his wife's services during the remaining hours of the day while she attended to his needs.

On April 8, 1987, the defendant wrote to the claimant's attorney and offered to pay for a home health care attendant while the claimant's wife was at work, and also offered to pay someone to occasionally substitute for the claimant's wife so that she could take a periodic break from the care that she provided to her husband 16 hours a day during the week and 24 hours a day on weekends. The defendant's offer was for a temporary trial period and did not include 24-hour-a-day service as had been demanded by the claimant. The claimant responded that the offer was inadequate and that he would not drop his claim based on the offer, but would welcome immediate payment of any amount. (Payment to a third party for eight hours per day of care was commenced on July 1, 1987.)

On the basis of that offer, the defendant asked the Workers' Compensation Court to conclude that future home health care was no longer an issue. However, the court refused to do so. In that motion, the defendant acknowledged that the pretrial order issue regarding medical services was based on the claimant's claim that "his wife should be paid for providing domiciliary care services the remaining 16 hours a day every day and during weekends."

The State Fund then concluded, and still contends, that its offer to pay a professional attendant eight hours a day somehow eliminated the issue of whether claimant's wife was entitled to payment for her services during the remaining 16 hours of every day

7

and for the 24 hours of service she provided during vacation time, weekends, and holidays. At that time, the only testimony on the subject of home health care had come from Shelly Oksness, a nurse; Dennis W. Dietrich, M.D., a neurologist; and Edward Shubat, Ph.D., a clinical psychologist. All were of the opinion that the claimant needed an attendant to assist him in caring for himself on a 24-hour-a-day basis.

On May 5, 1987, the Workers' Compensation Court denied the defendant's motion, and ruled that whether or not the claimant was entitled to future domiciliary care depended on the evidence that had been presented at the time of trial and through subsequent depositions.

On May 18, 1987, the defendant filed its Proposed Findings of Fact, Conclusions of Law, and Order. It is clear from those proposals that the defendant was still contending in court that it owed the claimant nothing for domiciliary care. In its proposed order, the defendant asked the court to find that Kathleen Hilbig did not meet the factors set out in Larson, supra, for payment of domiciliary care to a family member, and that the claim for payment for her services should be denied.

In his Proposed Findings, Conclusions, and Order, the claimant proposed that the court find that his wife was providing necessary home health services; that she was qualified by education and training to do so; and that she was entitled to be reimbursed for her past and future services at the rate of $7.50 an hour for 16

8

hours a day on those days that she worked outside the home, and for 24 hours a day on weekends, holidays, and during vacations.

In its Findings, Conclusions, and Judgment, which were entered on June 20, 1988, the trial court found that the claimant's severe head injury had resulted in an organic brain syndrome which left him permanently totally disabled and unable to care for himself. The court found that the claimant's condition was not improving, but was likely to decline, and that as a result of his injury he experienced uncontrolled seizures, memory loss, lack of judgment, and an inability to handle daily situations.

Based upon these findings, the trial court found that home health care services were a necessary element of the claimant's health care, and that someone should be with him 24 hours a day. The court went on to find that Kathleen Hilbig, the claimant's wife, was qualified by her education and training to provide home health care, and that the claimant should be compensated for domiciliary care at the rate of $7.50 per hour, 24 hours a day, from December 18, 1986, until April 8, 1987.

In spite of the above findings, the Workers' Compensation Court made no provision for payment for home health care or domiciliary benefits after April 8, 1987.

The claimant petitioned the Workers' Compensation Court to revise its order by providing payment for domiciliary care so long as it was necessary. However, in a brief filed in the Workers' Compensation Court on July 8, 1988, the defendant continued to oppose the claimant's request and suggested that the court require

the claimant to file a new petition for any future benefits related to domiciliary care. The claimant's post-trial petition was denied.

The trial court's denial of the claimant's post-trial petition was appealed to this Court. It was pursuant to that appeal that this case was remanded to the Workers' Compensation Court for further consideration of the claimant's entitlement to benefits for home health care beyond April 8, 1987. Hilbig, 777 P.2d 1296. In our opinion, we pointed out the Workers' Compensation Court's conclusion that:

> The defendant State Fund has acknowledged claimant's entitlement of domiciliary benefits of $7.50 per hour for eight hours a day to claimant's wife, beginning April 8, 1987, but not before that date.

We pointed out that "[n]o other justification appears in the court's order why home health care benefits were limited to a four month period or the need for future domiciliary care."

We recognized the claimant's post-trial petition and its denial, but concluded that "[i]t is not clear from the court's findings why it placed this cutoff date on benefits payable to Mrs. Hilbig."

It was for these reasons that we remanded this case to the Workers' Compensation Court to conduct whatever additional proceedings were necessary to determine the claimant's entitlement to domiciliary care after April 8, 1987.

Upon remand, and after considering our decision, the Workers' Compensation Court concluded that no further hearing was necessary.

No additional evidence was offered by the parties, and none was requested by the court.

Instead, both parties filed motions for summary judgment.

The defendant's motion was based upon its contention that on July 1, 1987, it began paying a third party to provide day care to the claimant on an eight hour per day basis, and that in March 1989 it authorized payment to Mrs. Hilbig at the rate of $7.50 per hour for the care that she provided. (However, payment of that amount to Mrs. Hilbig was conditioned on a stipulation by the claimant that the issue of home health care was moot and need not be considered as part of the Supreme Court appeal. It is not clear what, if anything, was paid to Mrs. Hilbig for her services prior to this Court's decision on August 11, 1989.)

Interestingly, in its brief in support of its motion for summary judgment, the defendant pointed out to the trial court that Dr. Dennis Dietrich, who testified on February 27, 1987, and Dr. Edward Shubat, who testified on January 20, 1987, were both of the opinion that claimant needed 24-hour-a-day care. However, the defendant then pointed out that on the basis of those opinions it agreed to pay for home health care on an eight-hour-a-day basis.

The claimant also moved for summary judgment. The claimant's motion was granted and the defendant's motion was denied.

In its order granting the claimant's motion for summary judgment, the Workers' Compensation Court concluded that the claimant had prevailed before the Workers' Compensation Court and before the Montana Supreme Court, and indicated that its

11

reconsideration of the claimant's entitlement to benefits for domiciliary care beyond April 8, 1987, was a direct result of this Court's instructions that that issue be reconsidered. The Workers' Compensation Court ordered that the defendant pay Mrs. Hilbig $7.50 an hour for 24 hours a day from April 8, 1987, so long as domiciliary care was necessary, and furthermore, that the defendant pay for the claimant's health club membership.

In spite of the defendant's protestations to the trial court and to this Court that it had voluntarily paid those benefits which were ultimately ordered by the Workers' Compensation Court, it apparently refused to do so even after the trial court's order granting the claimant summary judgment.

That order was entered on January 17, 1990. Over eight months later, on September 27, 1990, the claimant filed an application for a writ of execution with the Workers' Compensation Court. In the affidavit in support of that application, the claimant's attorney indicated that payment for Kathleen Hilbig's services was first received on August 8, 1990, and that even then the State Fund paid substantially less than it was ordered to pay by the Workers' Compensation Court. Pursuant to that application, a writ of execution was issued by the Workers' Compensation Court, and subsequently, the balance owed by the State Fund, pursuant to the Workers' Compensation Court's decision and judgment, was apparently paid.

The point of this long recitation of facts is simply this:

12

1. Even though the need for 24-hour-a-day domiciliary care was documented and demand for payment of those benefits made, payment was neither offered, tendered, nor made prior to the original trial on January 26, 1987.

2. Even after trial and the undisputed testimony of three health care providers that domiciliary care was necessary for the claimant on a 24-hour-a-day basis, the defendant still only offered to pay on an eight-hour-a-day basis, and then made every effort to have the claimant's petition for payment of the balance due dismissed.

3. Long after this case was tried, appealed, remanded, and summary judgment on remand was entered, the defendant still refused to pay the full amount that it had been ordered to pay to the claimant for his wife's services. That amount was only paid after a writ of execution was ordered. That writ of execution could not have been issued had the Workers' Compensation Court not re-assumed jurisdiction over this matter, based upon the remand of this case by this Court.

4. There is every indication that the defendant would not have voluntarily paid for future domiciliary care provided by Mrs. Hilbig had it not been ordered to do so by the Workers' Compensation Court after remand from this Court.

## I.

The first issue is whether the defendant's partial offer, tender, or payment of the benefits which were ultimately adjudged due enables it to avoid an obligation for payment of the claimant's

13

attorney fees, even though those benefits were tendered after trial. We conclude that it does not. This issue was decided in McKinley v. Am. Dental Mfg. Co. (1988), 232 Mont. 92, 754 P.2d 831.

In the McKinley case, we held that an "offer" made the day before a pretrial conference, and less than one week before the scheduled hearing date, could not be used to reduce the amount of the attorney fee recoverable by a successful claimant under § 39-71-612, MCA (1983). We stated:

> We conclude, however, that use of the eve-of-trial $40,940 figure would not result in a "reasonable attorney fee" under the facts of this case. In this case, we conclude that the "reasonable attorney fee" under § 39-71-612, MCA (1983), is computed using the difference between the amount awarded and the $36,927.80 offer made preceding the filing of the petition.

McKinley, 232 Mont. at 97, 754 P.2d at 834-35.

If an "eve-of-trial" offer could not be considered because it would not result in a "reasonable attorney fee," certainly an offer made subsequent to trial cannot be considered to reduce the attorney fee award to the claimant.

In this case, since no domiciliary benefits were tendered, paid, or even offered to the claimant prior to trial, it is clear that he is entitled to an attorney fee award of at least 33 percent of all benefits paid to the claimant for domiciliary care.

## II.

The next sub-issue is whether the claimant is entitled to an attorney fee equal to 40 percent of any of the benefits that he recovered because they were "based on the order of the Supreme Court."

14

This issue involves consideration of what § 39-71-612, MCA (1983), means when it provides that:

> [If the] award is greater than the amount <u>paid or tendered</u> by the employer or insurer, a reasonable attorney's fee as established by the . . . workers' compensation judge if the case has gone to hearing, based solely upon the difference between the amount settled for or awarded and the amount <u>tendered or paid</u>, may be awarded in addition to the amount of compensation.

(Emphasis added.)

The defendant contends that because it paid some portion of those benefits it was ultimately ordered to pay, and because it "offered" to pay other benefits prior to this Court's decision on August 11, 1989, that those benefits were not "based on the Order of the Supreme Court" and that, therefore, an attorney fee equal to 40 percent of those benefits is not appropriate.

It is not clear what amounts were actually paid by the defendant to the claimant prior to the decision of this Court. However, it is clear that the majority of the amount due for Mrs. Hilbig's services was not paid and that when an offer was finally made to pay for her services, conditions were attached, such as dismissal of the claimant's appeal to this Court.

Section 39-71-704, MCA, imposes an obligation upon the State Fund to pay for all medical services reasonably necessary for an injured claimant without limitation. That obligation is ongoing and continuing and cannot be conditioned upon the acceptance by the claimant of conditions attached by an insurer or employer which are not provided for in the Workers' Compensation Act.

15

For that reason, § 39-71-612, MCA (1983), provided for an attorney fee based on the difference between that amount actually "tendered or paid." Significantly, and in spite of language previously used by this Court in <u>McKinley</u>, it did not provide that insurers could avoid payment of attorney fees to a successful claimant by offering benefits which have never actually been tendered or paid.

There is substantial precedent for making a distinction between "tender or payment" of benefits, and a mere offer based on some condition such as a waiver by the claimant of his right to pursue further remedies. As stated in Washington Nat. Ins. Co. v. Sherwood Assoc. (Utah App. 1990), 795 P.2d 665:

> "In order to have a valid tender there must be 'a bona fide, unconditional, offer of payment of the amount of money due, coupled with an actual production of the money or its equivalent.'" *Carr v. Enoch Smith Co.*, 781 P.2d 1292, 1294 (Utah Ct.App. 1989) (quoting *Zion's Properties, Inc. v. Holt*, 538 P.2d 1319, 1322 (Utah 1975)). Informing an obligee that you are ready and willing to perform the contract is insufficient. *Century 21 All W. Real Estate & Inv. v. Webb*, 645 P.2d 52, 55-56 (Utah 1982); *Fischer v. Johnson*, 525 P.2d 45, 47 (Utah 1974).

<u>Washington Nat. Ins. Co.</u>, 795 P.2d at 670.

Other jurisdictions make a similar distinction between actual "tender or payment" and a mere offer. Bembridge v. Miller (Or. 1963), 385 P.2d 172; Kammert Bros. Enterprises, Inc. v. Tanque Verde Plaza Co. (Ariz. 1967), 420 P.2d 592; Vilbig v. Trumble Steel Erectors (Tex. Ct. App. 1970), 464 S.W.2d 676; Novik v. Bartell Broadcasters of N.Y., Inc. (1971), 323 N.Y.S.2d 108; Intern. Ind.,

16

Inc. v. United Mtg. Co. (Nev. 1980), 606 P.2d 163; Federal Land Bank of Spokane v. Parsons (Idaho App. 1989), 777 P.2d 1218.

The difference between an offer and a tender is further explained in Bembridge v. Miller in the following portion of that opinion:

> At common law the term "tender" has definite legal significance imparting not merely the willingness and intent to perform but also the ability at the time of tender to pay in accordance with the offer. The thing tendered, whether money, documents or chattels, must actually be produced and made available for the acceptance and appropriation of the person to whom it is offered. In essence the only distinction between "tender" and payment lies in the fact that a "tender" is not accepted while a payment is. Consequently, if there is an offer to perform but no money is made available, there can be no payment; and likewise, there can be no tender--at best only a naked offer to pay. *Equitable Life Assur. Soc. of United States v. Boothe*, 160 Or. 679, 86 P.2d 960; *Hartman v. Stark*, 99 Or. 596, 195 P. 1117.

Bembridge, 385 P.2d at 175.

In this case, the State Fund had an ongoing obligation to pay medical benefits when due. Included among those benefits, by its own admission, and pursuant to previous decisions of this Court, were benefits for domiciliary care or home health care services. Carlson, 700 P.2d 607; Larson, 742 P.2d 1003. If it disputed the extent of benefits due, then it had an obligation to pay or tender payment of those benefits that it agreed were due. The defendant had no right to withhold payment of benefits which were admittedly due in an effort to resolve the larger claim made by the claimant. It was with the above principle in mind that the legislature authorized the Workers' Compensation Court in § 39-71-612, MCA

17

(1983), to credit an insurer with the amounts actually "tendered or paid" when arriving at a reasonable attorney fee. However, the legislature did not authorize the Workers' Compensation Court to credit the defendant with an amount which was merely "offered" until § 39-71-612, MCA (1983), was amended in 1987. Since 1987, § 39-71-612, MCA, has provided as follows:

> (1) If an insurer pays <u>or submits a written offer</u> of payment of compensation under chapter 71 or 72 of this title but controversy relates to the amount of compensation due, the case is brought before the workers' compensation judge for adjudication of the controversy, and the award granted by the judge is greater than the amount paid or <u>offered</u> by the insurer, a reasonable attorney's fee and costs as established by the workers' compensation judge if the case has gone to hearing may be awarded by the judge in addition to the amount of compensation.

(Emphasis added.)

That amendment was not in effect at the time of the claimant's injury and, therefore, the defendant's argument based upon its unfulfilled "offers" are unpersuasive.

In summary, we conclude that the claimant is entitled to an award of attorney fees equal to 40 percent of those domiciliary benefits which were neither tendered nor paid to him prior to this Court's order dated August 11, 1989. The fact that the defendant acknowledged its obligation for and offered to pay for the claimant's wife's services at the rate of $7.50 an hour for 24 hours a day, cannot be used to reduce the defendant's obligation to pay the claimant's attorney fee when actual payment of those amounts was neither tendered nor made until long after summary

18

judgment was granted to the claimant on remand, and then only with the assistance of a writ of execution.

### III.

The final issue is what percentage applies to which benefits.

It is clear that no benefits for domiciliary or home health care were paid to the claimant prior to his trial on January 26, 1987. Therefore, the claimant is entitled to an award of attorney fees in an amount equal to at least 33 percent of any benefits paid for those services subsequent to that trial.

It is also clear that some money was tendered or paid to the claimant, or to a third party directly, for services provided by that third party on an eight-hour-a-day basis prior to our decision on August 11, 1989. Therefore, the 40 percent factor does not apply to those benefits.

It is not clear from the record how much money was actually paid to the claimant, or to his wife directly, for her services prior to our previous decision. However, the claimant's attorney fees received for those benefits should also be paid at the rate of 33 percent of the value of those benefits.

For all of those benefits related to the services of Kathleen Hilbig which the defendant had not paid until after this Court's decision, and which will be due for her services in the future, as well as for the cost of the claimant's health club membership, the claimant is entitled to an award of attorney fees equal to 40 percent of the value of the benefits.

Since we are unable to determine the dollar amounts which fall into each of the categories set forth above, this case is remanded to the Workers' Compensation Court for the limited purpose of making those calculations and for further proceedings consistent with this opinion.

This case is affirmed in part and remanded to the Workers' Compensation Court for further proceedings.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices